**NATIONAL FARMERS UNION PROPERTY AND CASUALTY CO., Petitioner,**

v.

**William James FRACKELTON, Respondent.**

No. 82SC31.

Supreme Court of Colorado, En Banc.

April 18, 1983.

As Modified on Denial of Rehearing May 2, 1983.

Robert C. Dawes, Durango, DeMoulin, Anderson, Campbell & Laugesen, P.C., Richard W. Laugesen, Denver, for petitioner.

Tom Goldsmith, Telluride, Charles Tindell, Daytona Beach, for respondent.

Bennett S. Aisenberg, Denver, for Colorado Trial Lawyers Ass'n, amicus curiae.

ERICKSON, Justice.

This appeal involves the interpretation of and relationship between the comparative

negligence statute, section 13–21–111, C.R.S.1973 & 1982 Supp., and the Uniform Contribution Among Tortfeasors Act, sections 13–50.5–101 to 106, C.R.S.1973 (1982 Supp.). In *National Farmers Union Property & Casualty Co. v. Frackelton,* 650 P.2d 571 (Colo.App.1981), the court of appeals reversed the district court's ruling that contribution among tortfeasors may be obtained in a declaratory judgment action by a party to a prior negligence lawsuit from a nonparty to the same lawsuit. For the reasons set forth in this opinion we affirm the judgment of the court of appeals. The district court's summary judgment is reversed and the case is remanded for amendment of the claim for contribution consistent with this opinion.

## I.

In 1976, William Frackelton and Robert Kerr suffered severe electrical burns while working at a job site near Telluride, Colorado. Frackelton and Kerr, who worked for different employers, were inserting a cable into a conduit attached to a power pole. A cap had been removed from the end of the conduit. As the two men pushed the cable up the conduit it came into contact with the power lines on top because of the absence of the cap, causing electroshock injuries. San Miguel Power Association (San Miguel) was responsible for maintaining the power poles and lines and was also in charge of supervising the work in which Kerr and Frackelton were engaged.

Frackelton and Kerr individually asserted claims for negligence against San Miguel for the injuries which they suffered. The district court consolidated both claims for trial, C.R.C.P. 42, because of the similarity of factual and legal issues. Frackelton, however, was never joined as a party in the Kerr case and Kerr was not a party in the Frackelton case. San Miguel, which originally filed a counterclaim alleging that Frackelton was responsible for Kerr's injuries, dropped the counterclaim before trial.

During the trial, Frackelton presented his case as a plaintiff seeking damages in negligence from a sole defendant. In neither case did San Miguel or Kerr assert that Frackelton was jointly responsible for Kerr's injuries, and San Miguel did not seek contribution from Frackelton as a joint tortfeasor. Nevertheless, the trial court, on its own motion, instructed the jury to make a comparison of Frackelton's and San Miguel's negligence in the *Kerr* suit.

The jury returned a verdict in the *Kerr* suit finding Kerr 10% negligent, Frackelton 35% negligent, and San Miguel 55% negligent in causing Kerr's injuries. The jury awarded $690,000 in damages to Kerr, which was reduced by 10% to $621,000. In the *Frackelton* suit, the jury found Frackelton 38% negligent and San Miguel 62% negligent, and awarded Frackelton $475,000, which was reduced by 38% to $294,500. The only issues to be resolved in the Frackelton case were damages for the injuries suffered by Frackelton and the comparative fault of the parties.

The petitioner, National Farmers Union Property and Casualty Co. (NFU), was San Miguel's liability insurer. NFU paid Kerr's judgment in full and then commenced a declaratory judgment action seeking contribution from Frackelton. In the declaratory judgment action, NFU sought a reduction in the amount it owed Frackelton. NFU asked for a set-off against the amount it owed Frackelton by the amount paid Kerr above its pro rata share of negligence determined in the prior action. NFU based its action on the jury's findings of relative fault in the *Kerr* suit among Kerr, Frackelton, and San Miguel.

The district court entered summary judgment in the declaratory judgment action in favor of NFU, finding that Frackelton was bound by the jury's allocation of fault in the *Kerr* lawsuit. Thus, the court ordered Frackelton to offset $293,800 [1] (the amount Frackelton would have owed Kerr) against

1. The amount included costs and interest.

the $294,500 judgment (sixty-two percent of $475,000) he had obtained from San Miguel.

The court of appeals reversed the summary judgment. The court held that Frackelton was not bound by the jury's finding of liability in the *Kerr v. San Miguel* lawsuit because Frackelton was not a "party" to that claim for relief. Since no judgment was entered against Frackelton vis-a-vis Kerr, the court reasoned that the issue of comparative negligence was not settled among Frackelton, Kerr, and San Miguel. The court of appeals, interpreting the contribution act, also held that contribution "applies only to parties against whom a judgment of liability has been entered, but not necessarily recovered"; and that "the judgment of liability of the several defendants must be entered before it is binding among such defendants in determining their right to contribution." 650 P.2d at 572–73. In our view, the court of appeals has reached the right result, though our analysis differs from the court's in several respects. We specifically disapprove the procedure followed by the district court to resolve issues relating to contribution among joint tortfeasors. We affirm the judgment of the court of appeals for the reasons set forth in this opinion.

## II.

### A. *Multiple Parties*

There is no doubt that multiple party issues under the comparative negligence statute and the contribution act are extremely complex legal issues. The confusing interrelationships among issues of joint negligence, settlement, indemnification, and contribution cast some doubts on the efficacy of legislation designed to resolve fairly issues of relative fault and liability. *See* McNichols, *Judicial Elimination of Joint and Several Liability Because of Comparative Negligence—A Puzzling Choice,* 32 Okla.L.Rev. 1, 37–38 (1979).

The comparative negligence statute, section 13–21–111, C.R.S.1973 & 1982 Supp., was intended to ameliorate the harsh common law rule which barred a contributorily negligent plaintiff from any recovery. *Mountain Mobile Mix v. Gifford,* 660 P.2d 883 (S.Ct.1983); *Montgomery Elevator Co. v. Gordon,* 619 P.2d 66 (Colo.1980). The Uniform Contribution Among Tortfeasors Act, sections 13–50.5–101 to 106, C.R.S.1973 (1982 Supp.), likewise was designed to remedy a harsh common law rule. Before the Act was adopted, contribution among joint tortfeasors was not allowed. *Hamm v. Thompson,* 143 Colo. 298, 353 P.2d 73 (1960). Changing rules of tort liability have expanded the number of parties who could be considered joint tortfeasors, while the rule of joint and several liability left the plaintiff with control over who would ultimately bear the losses. The contribution act remedied this situation by permitting the shifting of losses equitably among those tortfeasors who caused the damages. Laugesen, *Colorado's Contribution Among Tortfeasors Act,* 6 Colo.Law. 1475, 1475–76 (1977).

The much-needed torts legislation, however, left many unanswered questions. The first and most fundamental question is: To whom do the statutes apply?

The court of appeals held that Frackelton was not a "party" to Kerr's lawsuit against San Miguel in the determination of comparative negligence for the purpose of resolving companion issues of contribution. The court found that Frackelton had never been joined as a co-plaintiff or co-defendant in Kerr's lawsuit nor had any claims or counterclaims been asserted against Frackelton by the original parties. The court reasoned that language in the comparative negligence statute [2] "contemplates that the comparison of negligence be made only between parties [of record] to the tort action." 650

2. The court of appeals construed the language in section 13–21–111(1), "contributory negligence shall not bar recovery in any action ...,"

if such negligence was not as great as the negligence of *the person against whom recovery is sought.*" (Emphasis added.) Similarly,

P.2d at 572. Similarly, the court read the contribution act to apply only to "*parties against whom a judgment of liability has been entered, but not necessarily recovered.*" *Id.* (emphasis added).[3] We agree in part with the court of appeals' conclusions.

### B. *Absent Tortfeasors*

■ Before we discuss Frackelton's status in NFU's declaratory judgment action, we must determine whether the district court was correct in submitting the issue of Frackelton's negligence for the jury's consideration. We conclude that the comparative negligence statute precludes consideration of the negligence of absent tortfeasors by the trier of fact. In determining factual issues only the negligence of the parties to the lawsuit who participate in the trial should be considered in resolving liability under the comparative negligence statute.

■ The purpose of comparative negligence is to apportion negligence among those who caused the harm. *Mountain Mobile Mix v. Gifford, supra.* Ideally, the plaintiff and defendant will seek to join every potentially culpable party, either to increase the number of tortfeasors from whom damages can be recovered or to spread liability among multiple tortfeasors. Rules of joint and several liability insure that plaintiffs will recover fully, while the contribution act insures that defendants will pay only their percentage share of liability.

The problem of how to deal with those potentially culpable persons who cannot be brought into a lawsuit is difficult to resolve. Often, through no fault of either the plaintiff or the defendant, jurisdiction over a tortfeasor cannot be obtained, or a statutory or common law immunity may preclude joinder of some potentially culpable individuals. Were we developing a common law of comparative negligence we might reach a different result; our reading of existing statutes and case law, however, convinces us that the negligence of absent tortfeasors should not be considered by the trier of fact.

Policy considerations do not weigh heavily in favor of either position on the absent tortfeasor issue. The most compelling reason to consider the negligence of absent tortfeasors is that a more accurate allocation of negligence will result. *See Pierringer v. Hoger,* 21 Wis.2d 182, 124 N.W.2d 106 (1963); *Walker v. Kroger Grocery & Baking Co.,* 214 Wis. 519, 252 N.W. 721 (1934); *see also American Motorcycle Association v. Superior Court,* 20 Cal.3d 578, 578 P.2d 899, 146 Cal.Rptr. 182 (1978). The argument supporting consideration of the negligence of those other than the parties is based on the premise that comparative negligence was designed to allocate negligence among the parties *at fault* and not just the parties to the lawsuit. If the negligence of all tortfeasors is considered, then defendants are not left with the difficult task of minimizing their negligence without the opportunity of comparing the negligence of other culpable tortfeasors. *See Brown v. Keill,* 224 Kan. 195, 580 P.2d 867 (1978); *Paul v. N.L. Industries, Inc.,* 624 P.2d 68 (Okl.1980); *Lines v. Ryan,* 272 N.W.2d 896 (Minn.1978); *Connar v. West Shore Equipment of Milwaukee,* 68 Wis.2d 42, 227 N.W.2d 660 (1975); *Ross v. Koberstein,* 220 Wis. 73, 264 N.W. 642 (1936). *See also* McNichols, *A Puzzling Choice, supra;* Thode, *Comparative Negligence, Contribution Among Tortfeasors, and the Effect of a Release—A Triple Play by the Utah Legislature,* 1973 Utah L.Rev. 405, 425.

A second argument supporting consideration of absent tortfeasors is that it would tend to insure that all claims will be determined in one lawsuit. A full comparison in the original suit encourages plaintiffs to

---

sections 13–21–111(2)(b) and (4) ask for a finding of the negligence of "each party."

**3.** The court read language in section 13–50.5–102(1) which allows contribution when "two or more persons become jointly or severally *liable in tort*" as requiring a final judgment. (Emphasis added.)

join all potential tortfeasors in a single lawsuit. *Paul v. N.L. Industries, Inc., supra.* Similarly, joint and several liability and contribution encourage the defendant to join all potential joint tortfeasors. Many issues in multiple party suits can thereby be resolved in a single forum, thus avoiding unnecessary litigation.

Full comparison may also tend to encourage settlement before trial. Plaintiffs and defendants may not wish to litigate because of the effect on the jury of the unknown factor of absent tortfeasors. Defendants in particular may not wish to risk joint and several liability for the plaintiff's losses with slight hopes of recovering contribution from difficult-to-locate joint tortfeasors. *Paul v. N.L. Industries, Inc., supra.*

These considerations, however, must be balanced against competing policy arguments. First, a comparison of the negligence of absent tortfeasors may work to defeat any recovery by a deserving plaintiff. Under our comparative negligence statute, the plaintiff may satisfy the judgment awarded only from those tortfeasors whose combined negligence is greater than the plaintiff's and "against whom recovery is sought." Section 13–21–111, C.R.S.1973. The persons against whom recovery is sought are defendant-tortfeasors and any third party defendant who participate in the trial. A defendant who has settled with the plaintiff is not a person "against whom recovery is sought." Likewise, the plaintiff's claim against tortfeasors named as defendants should not be compromised in cases where the identity of an absent tortfeasors is unknown, such as the "phantom" in a three car hit-and-run accident. By requiring the jury to apportion 100 percent of the negligence among the parties, the burden of persuading the factfinder to resolve the comparative negligence equation is shared equally between the plaintiffs and the tortfeasors who participate in the trial.

Second, it is unfair to saddle the plaintiff with the burden of litigating liability issues of a non-party or to try the absent tortfeasor *in absentia* under conditions which could not bind that person under principles of res judicata or collateral estoppel. *See Shanley v. Callanan Industries, Inc.,* 54 N.Y.2d 52, 444 N.Y.S.2d 585, 429 N.E.2d 104 (1981). The plaintiff, however, may be collaterally estopped to deny certain issues which were litigated in a prior suit. *See, e.g., Bernhard v. Bank of America,* 19 Cal.2d 807, 122 P.2d 892 (1942); *Pomeroy v. Waitkus,* 183 Colo. 344, 517 P.2d 396 (1973). We need not resolve here the complexities of collateral estoppel, but the issue is a factor against adopting a rule permitting the comparison of the negligence of absent tortfeasors.

Third, the contribution among tortfeasors act preserves the right of the named defendants to sue other joint tortfeasors to correct overpayments to the plaintiff. A plaintiff has every incentive to join all potential tortfeasors because of our joint and several liability and combined comparison rules; however, it is preferable to place the burden of finding and suing absent tortfeasors on those who caused plaintiff to suffer damages.

These competing arguments create difficult policy choices, none of which is clearly superior to the other. Our reading of the language in the comparative negligence statute, however, convinces us that comparison of the negligence of named parties who participate in the trial is the choice made by the General Assembly.

Section 13–21–111(1) directs the trier of fact to reduce the recovery of contributorily negligent plaintiffs by their percentage of negligence. The comparison is made against the person or persons "against whom recovery is sought."[4] *See Mountain Mobile Mix v. Gifford, supra* (the negligence of all party defendants is combined in

---

4. Sections 13-21–111(1) and (2) provide:

"(1) Contributory negligence shall not bar recovery in any action by any person or his

legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was

comparison to plaintiff's negligence). Section 13–21–111(2)(b) instructs the trier of fact to return a special verdict stating the "degree of negligence of each party." Section 13–21–111(4) requires the trial court to instruct the jury on the effect of a determination of comparative negligence on "each party" and that the "attorneys for each party" may argue the effect of comparative negligence before the jury.

We believe that the plain and natural meaning of the statutory language precludes us from expanding the statute to include consideration of absent tortfeasors. The word "party" has been previously interpreted by this court to mean a person who has appeared in the litigation and who is described in the record as a plaintiff or defendant. *See, e.g., Wise v. Turner,* 65 Colo. 420, 176 P. 838 (1918); *Crippen v. X.Y. Irrigating Ditch Co.,* 32 Colo. 447, 76 P. 794 (1904); *Red Seal Potato Chip Co. v. Colorado Civil Rights Commission,* 44 Colo.App. 381, 618 P.2d 697 (1980). By adopting into a statute a word or phrase previously interpreted by the court, the legislature is presumed to have intended that the earlier interpretation be applied by the courts in construing subsequent legislation. *Colorado v. Cooke,* 150 Colo. 52, 370 P.2d 896 (1962). To permit consideration of the absent tortfeasor would strain the language of section 13–21–111 and create numerous uncertainties in the application of both the comparative negligence and the contribution acts. When combined with the possibility that our previous decisions in the comparative negligence area would be undercut, *see e.g., Mountain Mobile Mix v. Gifford, supra; Martinez v. Stefanich,* 195 Colo. 341, 577 P.2d 1099 (1978), we hesitate to extend the meaning and scope of the statutory language.

Our conclusion is bolstered by the General Assembly's recent legislation applying comparative negligence to products liability cases. In section 13–21–406, C.R.S.1973 (1982 Supp.), the General Assembly explicitly stated that in products liability cases comparative fault should be considered only among all "parties to the action." In our view, section 13–21–111 should be interpreted consistent with that language. Further modifications of the comparative negligence act to include consideration of absent tortfeasors should be left to the General Assembly. Accordingly, we affirm the holding of the court of appeals on this issue.

### C. *Subsequent Action for Contribution*

The district court ruled in the subsequent declaratory judgment action for contribution by NFU against Frackelton that the jury's findings of percentage fault were binding on Frackelton. The court then entered summary judgment for NFU with a corresponding set-off of the amount which NFU paid Kerr above its pro rata share of 55% in the original negligence action (to which Frackelton was never a named party) where fault was allocated among Kerr (10%), Frackelton (35%), and San Miguel (55%). We cannot agree with the district court that Frackelton was bound in a separate declaratory judgment action by the jury's determination of negligence in a suit to which he was never joined as a party.

As the court of appeals pointed out, the trial court's discretionary order of consolidation does not merge the consolidated suits into a single cause of action. 650 P.2d at 572. *See* C.R.C.P. 42. Additionally, Frackelton was never served with process in the *Kerr v. San Miguel* suit; nor did San Miguel ever attempt to implead Frackelton into that suit. Also, San Miguel did not coun-

---

not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage, or death recovery is made.

"(2) In any action to which subsection (1) of this section applies, the court, in a nonjury trial, shall make findings of fact or, in a jury trial, the jury shall return a special verdict which shall state:

(a) The amount of the damages which would have been recoverable if there had been no contributory negligence; and

(b) The degree of negligence of each party, expressed as a percentage."

terclaim for contribution in the *Frackelton v. San Miguel* suit. In other words, neither San Miguel nor Kerr asserted in pleadings or otherwise that Frackelton might be liable for all or a portion of Kerr's damages. San Miguel considered a counterclaim against Frackelton, but dropped the claim prior to trial. In effect, the trial court reinstituted the counterclaim *sua sponte* when it instructed the jury to consider Frackelton's negligence and bound Frackelton to the jury's findings. In our view, Frackelton, as a non-party to the suit, could not be conclusively bound by the jury's determination of relative fault in a subsequent declaratory judgment action for contribution. *See Young v. Steinberg,* 53 N.J. 252, 250 A.2d 13 (1969).

It is axiomatic that a person must have notice that a claim is being asserted against him. Frackelton's litigative approach to the *Kerr* lawsuit might have changed drastically if he knew that he was considered a party for the purposes of a subsequent contribution action. First, Frackelton believed he was suing only San Miguel and defending only against the defense of contributory negligence. Since Kerr had not sued Frackelton, nor had San Miguel impleaded him, Frackelton had no reason to contest Kerr's contributory negligence in hopes of reducing Kerr's recovery and enhancing his own. Second, Frackelton may have considered settling with Kerr if he knew that the jury's findings in the *Kerr* suit would be binding. Third, because Frackelton and Kerr were represented by the same attorneys, a conflict of interest arises if the plaintiffs are considered opposing parties in the same action because both parties would want to place a higher degree of fault on the other party. *See, e.g., Code of Professional Responsibility* D.R. 5-105 (1973). In our view, these considerations weigh heavily against considering Frackelton bound by the jury's findings.

■ Issues of res judicata and collateral estoppel are also raised by the trial court's ruling. The declaratory judgment, in effect, enforces a judgment against someone not a party to the previous suit. Collateral estoppel cannot be applied to the disadvantage of a person who has not litigated the issue in question:

> "Some litigants—those who have never appeared in a prior action—may not be collaterally estopped without litigating the issue. They have never had the chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarely against their position."

*Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971). *See also Bernhard v. Bank of America,* 19 Cal.2d 807, 122 P.2d 892 (1942) (original party may be bound on some issues); 18 C. Wright, R. Miller & E. Cooper, *Federal Practice & Procedure: Jurisdiction* § 4464 (1981); McNichols, *Judicial Elimination of Joint and Several Liability Because of Comparative Negligence—A Puzzling Choice,* 32 Okla.L.Rev. 1, 34 (1979); Thode, *Comparative Negligence, Contribution Among Tort-Feasors, and the Effect of a Release—A Triple Play by the Utah Legislature,* 1973 Utah L.Rev. 405,. 425; *Handbook of the National Conference of Commissioners on Uniform State Laws,* Comparative Fault Act 343–53 (1977). It is essential that parties should be adversaries among themselves before being bound by a judgment. *Greenspan v. Green,* 255 S.W.2d 917 (Tex.Civ.App.1953).[5]

---

**5.** In *Pomeroy v. Waitkus,* 183 Colo. 344, 350–51, 517 P.2d 396, 399 (1973), we adopted the following criteria for determining whether collateral estoppel may be invoked: First, was the issue decided in the prior adjudication identical with the one presented in the action in question? Second, was there a final judgment on the merits? Third, was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? Fourth, did the party against whom the plea is asserted have a

■ It was error for the trial court to bind Frackelton in a declaratory judgment action to the jury's findings of relative fault in the prior action to which he was not a party. *See Eurich v. Alkire,* 224 Kan. 236, 579 P.2d 1207 (1978) (non-party to a comparative negligence action should not be bound by a judgment even though his causal negligence may have been considered). Under the contribution act, a separate action for contribution may be brought in which all parties have the opportunity of litigating responsibility among themselves. Section 13–50.5–104(1). Of course, the issue of contribution can also be resolved in the initial action upon motion by the parties. Section 13–50.5–104(2). NFU has not asserted its rights to contribution from Frackelton and could not do so in a declaratory judgment action against non-parties to the prior suit. NFU stands in the shoes of San Miguel. San Miguel did not attempt to reduce Frackelton's recovery because of his involvement with Kerr. NFU cannot now reduce Frackelton's recovery by looking to issues resolved by the jury in the *Kerr* lawsuit.

### D. *Contribution From a Non-Party*

■ The court of appeals held that an insurer of a tortfeasor found liable in a prior action could not recover contribution from a non-party to that prior action. We disagree.

An important aspect of the contribution act is that contribution can be sought from tortfeasors not joined in the prior action. It is only necessary that "two or more persons become jointly or severally *liable in tort* for the same injury to person or property .... even though judgment has not been recovered against all or any of them." Section 13–50.5–102(1) (emphasis added). Thus, a person "liable in tort," but not a party to the original suit may still be liable for contribution. The language "liable in tort" in section 13–50.5–102(1) refers to a person's exposure to a civil action [6] and not to the existence of final judgment in tort. *See Tamashiro v. DeGama,* 51 Hawaii 74, 450 P.2d 998 (1969); *Spitzack v. Schumacher,* 308 Minn. 143, 241 N.W.2d 641 (1976); *Markey v. Skog,* 129 N.J.Super. 192, 322 A.2d 513 (1974); *Zarella v. Miller,* 100 R.I. 545, 217 A.2d 673 (1966).

Furthermore, section 13–50.5–102(5) expressly allows insurers to seek contribution.[7] Almost by necessity, an insurer will not be able to assert its contribution claim until after the "prior action" has concluded. The court of appeals' reading of the statute would make the line-up of parties in the initial lawsuit almost conclusive for the purposes of later contribution actions.

The court of appeals also held that an entry of judgment is necessary before the right of contribution accrues. As stated above, the statute only requires that a person become "liable in tort" before the right of contribution arises. The right to collect contribution, of course, depends on a binding and final determination of fault among joint tortfeasors. That judgment may be obtained in the initial lawsuit by asserting a claim of contribution or in a separate action. Sections 13–50.5–104(1) & (2).

full and fair opportunity to litigate the issue in the prior adjudication?

**6.** In C. Heft & C. Heft, *Comparative Negligence Manual* § 1.320 (1978), the authors noted that "the right of contribution arises from *common liability* and ripens into a cause of action upon payment by reason of judgment, or pursuant to reasonable settlement made with the injured person." Common liability is "determined at the time the accident occurs, and not as of the time the cause of action for contribution is asserted." (Emphasis added) (citing *Bielski v. Schulze,* 16 Wis.2d 1, 114 N.W.2d 105 (1962)).

**7.** The section provides:

"A liability insurer, who by payment has discharged in full or in part the liability of a tortfeasor and has thereby discharged in full its obligation as insurer, is subrogated to the tortfeasor's right of contribution to the extent of the amount it has paid in excess of the tortfeasor's pro rata share of the common liability. This provision does not limit or impair any right of subrogation arising from any other relationship."

## III.

The interrelationship between comparative negligence and contribution among tortfeasors raises many difficult issues, especially when the number of parties involved in a suit increases. Fortunately, most theoretical multiple party problems can be resolved simply by joinder of potential tortfeasors and resolution of contribution issues in the initial cause of action. For example, in this case San Miguel could have prevented the ensuing controversy by impleading Frackelton as a third-party defendant.

For the reasons discussed above, we affirm the judgment of the court of appeals. The district court's summary judgment is reversed and on remand the petitioner should be permitted to amend its complaint to bring an action for contribution consistent with section II, D of this opinion.