The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
September 5, 2019

## 2019COA141

### No. 18CA0269, *LB Rose Ranch v. Hansen Construction* — Torts — Uniform Contribution Among Tortfeasors Act — Release or Covenant Not to Sue

A division of the court of appeals reviews the district court's

judgment requiring the second of two tortfeasors to pay

contribution to the first tortfeasor, representing the second

tortfeasor's share of damages for which they were jointly liable in

tort.  The division holds that a release the second tortfeasor

received from the plaintiffs as part of a settlement did not discharge

its contribution liability under section 13-50.5-105(1)(b), C.R.S.

2018.  Before the second tortfeasor's settlement, the first tortfeasor

had fully satisfied their common liability to the plaintiffs.  Because

the settlement did not resolve any common liability, the release did

not discharge the second tortfeasor's contribution liability to the

first.  The division, therefore, affirms the judgment.

Court of Appeals No. 18CA0269
Garfield County District Court No. 10CV142
Honorable James B. Boyd, Judge

LB Rose Ranch, LLC,

Defendant-Appellant,

v.

Hansen Construction, Inc.,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE NAVARRO
Martinez* and Miller*, JJ., concur

Announced September 5, 2019

Hall & Evans, LLC, Alan Epstein, Brian Molzahn, Denver, Colorado, for
Defendant-Appellant

Holley, Albertson & Polk, PC, Dennis B. Polk, Eric E. Torgersen, Lakewood,
Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2018.

¶ 1     LB Rose Ranch, LLC (Rose) appeals the district court's contribution judgment in favor of Hansen Construction, Inc. (Hansen), representing Rose's share of damages for which they were jointly liable in tort.  We hold that a release Rose received from the plaintiffs as part of a settlement did not discharge Rose's contribution liability under section 13-50.5-105(1)(b), C.R.S. 2018. Before Rose's settlement, Hansen had fully satisfied the tortfeasors' common liability to the plaintiffs.  Because the settlement between Rose and the plaintiffs did not resolve any common liability shared by Rose and Hansen, the release did not discharge Rose's contribution liability to Hansen.  Therefore, we affirm the contribution judgment.

## I. Procedural History

¶ 2     A group of homeowners sued Rose, Hansen, and other defendants for damages caused by defects in the design, construction, and repair of twenty single-family homes in the Ironbridge Golf Club and Mountain Community subdivision in Glenwood Springs.[1]

---

[1] Because the plaintiffs below are not parties to this appeal, we refer to them simply as the homeowners.

¶ 3     Hansen and other defendants compelled arbitration, but Rose did not. Thus, Rose did not participate in the ensuing arbitration. The arbitrator awarded damages to the homeowners and found that Hansen, Rose, and other defendants jointly caused them.

¶ 4     Rose and the homeowners went to a jury trial. Hansen did not participate in that trial. Like the arbitrator, the jury found Rose, Hansen, and other defendants jointly and severally liable for sizeable damages. In particular, the jury found that Rose "consciously conspired and deliberately pursued with [Hansen and others] a common plan or scheme to engage in conduct that was negligent, that involved a negligent misrepresentation or nondisclosure, or which was a breach of [their] fiduciary duties."

¶ 5     As to each homeowner's damages, the jury found Rose 30% at fault and Hansen 15% at fault. As later interpreted by the district court, the arbitrator attributed 20% fault to Rose and 18% to Hansen. Both the arbitrator and the jury awarded damages on a lot-by-lot basis, rather than a single aggregate award.

¶ 6     In October 2015, the court confirmed and entered judgment on the arbitration awards against Hansen and others. Hansen

satisfied this judgment as to each homeowner, paying an aggregate amount of over $9 million.

¶ 7    When entering judgment on the jury verdicts against Rose, the court found that Rose was bound only by the jury's findings and Hansen was bound only by the arbitrator's findings.  The court also decided that the homeowners could not receive double recovery for damages already paid by Hansen.  Therefore, the court compared the jury award for each lot to the arbitrator's award for each lot, and the court determined that Rose must pay each homeowner only those damages awarded by the jury that exceeded those awarded by the arbitrator (and already paid by Hansen).

¶ 8    To accomplish this, the court entered judgment against Rose for the entire amount of the jury award (with a small deduction for an inconsistency) but found that the judgment for each lot was satisfied to the extent that Hansen had already paid the damages. For many lots, this finding entirely extinguished Rose's duty to pay the homeowners.  In total, the court entered judgment against Rose for over $6.6 million and ruled that most of it — all but $698,548.93 — had been satisfied by Hansen.  The homeowners'

claims against Rose for prejudgment interest, fees, and costs remained outstanding.

¶ 9 After the court entered judgment on the jury verdicts, Rose settled with the homeowners for approximately $1 million, and they released Rose from all claims related to the properties. Both Rose and the homeowners waived their right to appeal the judgment.

¶ 10 Hansen then sought a contribution judgment against Rose for the amount of common liability to the homeowners that Hansen had satisfied. To determine the common liability of Rose and Hansen, the court referred to its findings supporting the judgment on the jury verdicts. The court found that Rose and Hansen were jointly liable as to each lot for only the damage amounts awarded *both* by the jury as to Rose and by the arbitrator as to Hansen. The court found this joint amount to be $5,914,566.37 and ruled that Hansen had paid this entire amount to the homeowners when it satisfied the arbitration judgment. The court, applying the jury's finding as to Rose's percentage of fault, then concluded that Rose must pay Hansen 30% of this joint liability, or $1,774,369.91.

¶ 11 In doing so, the court rejected Rose's assertion that the release received from the homeowners as part of the settlement discharged

4

Rose from any contribution liability to Hansen. According to the court, Rose's settlement with the homeowners did not resolve any common liability with Hansen. This was true because, at the time of the settlement, only Rose was liable to pay the homeowners anything: the $698,548.93 owed them under the judgment on the jury verdicts (plus interest, costs, and fees in amounts yet to be determined). Rose appeals.

## II. Contribution Judgment

¶ 12    Rose contends that the district court erred in the contribution judgment because (1) Hansen's satisfaction of the arbitration judgment did not extinguish Rose's liability to the homeowners; (2) Rose's settlement with the homeowners discharged any contribution liability to Hansen; and (3) the court violated Rose's due process rights by holding it responsible for the damages determined by the arbitrator even though it was not a party to the arbitration. We are not persuaded. Instead, we agree with the district court's thorough and well-supported decision.

## A. Standard of Review

¶ 13    We review the district court's interpretation of a statute de novo and its findings of fact for clear error. *Scott R. Larson, P.C. v.*

5

*Grinnan,* 2017 COA 85, ¶ 84.  We review procedural due process claims de novo.  *People in Interest of C.J.,* 2017 COA 157, ¶ 25.

## B. Applicable Law

¶ 14    The Uniform Contribution Among Tortfeasors Act, sections 13-50.5-101 to -106, C.R.S. 2018, was adopted to "permit the equitable apportionment of damages among the tortfeasors responsible for those damages."  *Kussman v. City & Cty. of Denver,* 706 P.2d 776, 778 (Colo. 1985).  The contribution act codifies a tortfeasor's right of contribution from another tortfeasor when both become "jointly or severally liable in tort" for the same injury to persons or property.  § 13-50.5-102(1), C.R.S. 2018.  The contribution right "exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share."  § 13-50.5-102(2).

¶ 15    The contribution right is especially pertinent when two tortfeasors are jointly liable for an injury because, in that instance, a plaintiff may recover the full amount of damages from either tortfeasor.  *See* § 13-21-111.5(4), C.R.S. 2018 (When "joint liability" is imposed on two parties, each "shall have a right of contribution from his fellow defendants acting in concert."); *Nat'l Farmers Union*

*Prop. & Cas. Co. v. Frackelton*, 662 P.2d 1056, 1059 (Colo. 1983) ("Rules of joint and several liability insure that plaintiffs will recover fully, while the contribution act insures that defendants will pay only their percentage share of liability."). "The relative degrees of fault of the joint tortfeasors shall be used in determining their pro rata shares" of the common liability. § 13-50.5-103, C.R.S. 2018.

¶ 16    "An important aspect of the contribution act is that contribution can be sought from tortfeasors not joined in the prior action." *Frackelton*, 662 P.2d at 1063; *see Graber v. Westaway*, 809 P.2d 1126, 1128 (Colo. App. 1991) (Section 13-50.5-102 "does not prohibit a defendant found liable in tort from subsequently litigating the several liability of other tortfeasors."). This follows because the phrase "liable in tort" in section 13-50.5-102(1) refers to a party's "exposure to a civil action" and not to the existence of a final judgment in tort. *Frackelton*, 662 P.2d at 1063. But "[a]ny finding of a degree or percentage of fault or negligence of a nonparty shall not constitute a presumptive or conclusive finding as to such nonparty for the purposes of a prior or subsequent action involving that nonparty." § 13-21-111.5(3)(a). Instead, in the separate action for contribution, the nonparty may relitigate the extent to which it

is responsible for the plaintiff's injuries. *See Frackelton*, 662 P.2d at 1063; *see also Watters v. Pelican Int'l, Inc.*, 706 F. Supp. 1452, 1456 (D. Colo. 1989) ("Presumably, a non-party may persuade a subsequent jury that in fact she was not liable for plaintiff's injuries.").

¶ 17     Section 13-50.5-105 applies when one tortfeasor liable in tort for the same injury as another settles with the injured party and receives a release or covenant not to sue or not to enforce judgment. Under section 13-50.5-105(1)(a), the release reduces the aggregate claim against the other tortfeasors by any degree or percentage of fault attributable to the tortfeasor who received the release. This provision "ensur[es] that a tortfeasor who has not settled will not bear the full burden of damages simply because another tortfeasor has settled." *Kussman*, 706 P.2d at 779. Section 13-50.5-105(1)(b) discharges the tortfeasor who received the release from liability for contribution to "any other tortfeasor" liable for the same injury.

### C. Analysis

#### 1. Hansen's Right of Contribution

¶ 18     Rose contends that Hansen's satisfaction of the arbitration judgment did not extinguish Rose's liability to the homeowners

because Rose was not a party to the arbitration. This means, Rose says, that Hansen had no right of contribution. Rose is mistaken.

¶ 19    Rose was a party to the jury trial, and the jury found Rose liable to the homeowners for over $6.6 million. Hansen, however, paid the homeowners over $9 million. The district court determined that approximately $5.9 million of that constituted a common liability with Rose — based on the jury's verdicts and the arbitrator's findings.[2] Therefore, the court found that Hansen had already satisfied over $5.9 million of Rose's common liability, meaning that Rose did not have to pay that amount to the homeowners. To that extent, representing over 89% of the total of the jury verdicts, Rose's liability was extinguished by Hansen.

¶ 20    True, Hansen did not discharge 100% of Rose's liability because the jury found that some homeowners suffered more damages than found by the arbitrator. Rose alone was liable for

---

[2] To reiterate, the court calculated this figure by first comparing the jury verdict for each lot to the arbitration award. The court found that whichever amount was smaller constituted the parties' joint liability. Then, the court added up the joint liability for each lot to arrive at roughly $5.9 million. This figure does not include any damages that were not found by both the jury and arbitrator.

those extra damages. As the court explained, "[Rose] is bound by the outcome of the jury trial in which it participated."

¶ 21 The contribution act, however, does not require a tortfeasor to extinguish *all* of a joint tortfeasor's liability before the right of contribution arises. Instead, the right exists "in favor of a tortfeasor who has paid more than his pro rata share of the common liability . . . ." § 13-50.5-102(2). In satisfying the arbitration judgment, Hansen paid all of the common liability it shared with Rose. That payment exceeded Hansen's 18% pro rata share found by the arbitrator and discharged Rose's 30% share found by the jury. Therefore, Hansen was entitled to contribution from Rose. *See Kussman*, 706 P.2d at 779 ("Where a tortfeasor pays more than its share, it is entitled to contribution from other tortfeasors to the extent of excess payment.").

### 2. Rose's Release from the Homeowners

¶ 22 Rose contends that the release it received from the homeowners as part of the post-trial settlement precluded Hansen's contribution claim, pursuant to section 13-50.5-105(1)(b). The district court disagreed, finding that Rose had not settled common

liability shared with Hansen but only Rose's individual liability to the homeowners. The court was right.

¶ 23 As discussed, a tortfeasor cannot be bound by a fact finder's determination of fault in an action to which the tortfeasor was not a party. *See Frackelton*, 662 P.2d at 1061-63; *see also Patten v. Knutzen*, 646 F. Supp. 427, 430 (D. Colo. 1986); *cf. Ross v. Old Republic Ins. Co.*, 134 P.3d 505, 510 (Colo. App. 2006) ("[P]ersons not parties to a judicial proceeding cannot be bound by the court's action therein."), *aff'd in part and rev'd in part on other grounds*, 180 P.3d 427 (Colo. 2008). As a result, Rose could be liable to the homeowners only for the damages found by the jury, and Hansen could be liable only for the damages found by the arbitrator. The liability in common came to approximately $5.9 million.

¶ 24 Beyond that common amount, however, neither party was *jointly* liable with the other. (Instead, each party was separately liable for any excess amounts assessed by each party's respective fact finder.) After Hansen paid the parties' common liability of $5.9 million, Rose was no longer obligated to pay the homeowners any of that amount because the court ruled that double recovery would be improper. *See Quist v. Specialties Supply Co.*, 12 P.3d 863, 866

(Colo. App. 2000) ("A plaintiff may not receive a double recovery for the same injuries or losses arising from the same conduct.").

¶ 25    Hence, before Rose's settlement with the homeowners, Rose's common liability with Hansen had been extinguished. Rose's only remaining liability to the homeowners was $698,548.93, which reflected damages to individual homeowners found by the jury but not by the arbitrator. Because the arbitrator found that Hansen did not cause those damages, those damages did not reflect Hansen's "liabil[ity] in tort for the same injury" as Rose. § 13-50.5-105(1). For the same reason, Hansen was not an "other tortfeasor" under section 13-50.5-105(1)(b) with respect to the additional $698,548.93 in damages found by the jury. Section 13-50.5-105(1)(b), therefore, did not apply.

¶ 26    Contrary to Rose's view, the supreme court's decision in *Frackelton* does not require a different result.[3] As mentioned, the *Frackelton* court clarified that, because "liable in tort" in section 13-

---

[3] After oral arguments, we ordered supplemental briefs further addressing *National Farmers Union Property & Casualty Co. v. Frackelton,* 662 P.2d 1056 (Colo. 1983), as well as whether a postjudgment release can satisfy section 13-50.5-105(1)(b), C.R.S. 2018. We thank the parties for their supplemental briefs.

50.5-102(1) refers to a party's exposure to a civil action and not to the existence of a final judgment in tort, a tortfeasor who was not a party to an earlier action still may be liable for contribution to the tortfeasor sued by the plaintiff. *See* 662 P.2d at 1063. In support, the *Frackelton* court cited out-of-state cases recognizing that a tortfeasor may be liable for contribution even where the plaintiff could not recover damages from that tortfeasor due to immunity, the expiration of a statutory limitations period, or the failure to timely file a requisite notice of claim. *See id.*; *Spitzack v. Schumacher*, 241 N.W.2d 641, 643 (Minn. 1976); *Markey v. Skog*, 322 A.2d 513, 518 (N.J. Super. Ct. Law Div. 1974), *abrogated in part by Jones v. Morey's Pier, Inc.*, 165 A.3d 769 (N.J. 2017); *Zarrella v. Miller*, 217 A.2d 673, 675 (R.I. 1966). In other words, if common liability between tortfeasors existed at the time the tort occurred, this common liability is not extinguished simply because the plaintiff (due to a procedural bar) can no longer sue one of the tortfeasors at the time the cause of action for contribution is asserted. *See Frackelton*, 662 P.2d at 1063 n.6; *see also Spitzack*, 241 N.W.2d at 643 (distinguishing a procedural defense that *avoids* liability from a defense on the merits that *denies* liability).

13

¶ 27    These conclusions have little application here because the circumstances are quite different.  The homeowners successfully sued both Rose and Hansen (among others) and secured judgments against each that established the extent of their common liability.  The question is whether Hansen continued to share common liability to the homeowners when Rose settled with them.  For contribution purposes, the answer is no because Hansen had already satisfied the full extent of its liability to the homeowners (both common and individual) as determined by the judgment.  Section 13-50.5-104(6), C.R.S. 2018, provides that "[t]he judgment of the court in determining the liability of the several defendants to the claimant for an injury or wrongful death shall be binding as among such defendants in determining their right to contribution."  Therefore, while a final judgment against a tortfeasor is not necessary before contribution can be sought from that tortfeasor, a final judgment must be given effect where one exists.  *See also Bishop v. Klein*, 402 N.E.2d 1365, 1370-71 (Mass. 1980) (applying a uniform contribution act provision identical to section 13-50.5-104(6)); *Med. Mut. Ins. Co. of N.C. v. Mauldin*, 529 S.E.2d 697, 700-

03 (N.C. Ct. App. 2000) (same), *aff'd by an equally divided court,* 543 S.E.2d 478 (N.C. 2001).

¶ 28 Even so, Rose maintains that section 13-50.5-104(6) does not apply because Rose and Hansen were not bound by the same judgment. But the same court in the same civil action issued the judgment confirming the arbitration award and the judgment on the jury verdicts. And, when determining their common liability, the court was careful to bind Hansen only to the arbitrator's findings and to bind Rose only to the jury's findings. The judgment on the jury verdicts — which, Rose concedes, is binding on it — identifies the parties' common liability by noting the amount of the judgment that Hansen had already satisfied. So, it is appropriate to hold Rose to that assessment of the common liability, approximately $5.9 million. Because Hansen fully paid this common liability before Rose settled with the homeowners, Rose's settlement did not resolve any common liability.

¶ 29 Stated differently, *only* Rose was liable for the additional $698,548.93 due under the judgment on the jury verdicts, and Rose was liable for *only* that amount when it settled with the homeowners (along with pending interest claims, etc.). So, the

15

settlement and release pertained only to those particular damages. This conclusion helps explain why the homeowners settled for around $1 million even though the jury had awarded them over $6.6 million in total.

¶ 30    Still, Rose maintains the contribution judgment is internally inconsistent because the court sometimes noted that Rose and Hansen were "jointly and severally liable" for damages but the court later found that Rose "had no joint liability to settle." When the judgment is considered as a whole, however, it is consisent. The judgment indicates that both the jury and the arbitrator found Rose and Hansen jointly and severally liable for damages. The judgment also reflects that Rose and Hansen were not liable for any amounts beyond those awarded by their respective fact finder. For those non-overlapping amounts, Rose and Hansen were not jointly liable. Accordingly, as to the additional $698,548.93 that Rose owed the homeowners, Hansen was not jointly or severally liable because that amount exceeded the arbitrator's award. And those were the only damages still unpaid when Rose settled with the homeowners.

¶ 31    Rose also argues that the court erroneously relied on *Pierce v. Wiglesworth*, 903 P.2d 656 (Colo. App. 1994). But we do not read

16

the court's decision as depending heavily on that case. Rather, the court emphasized that section 13-50.5-105(1)(b) did not apply because Rose had no joint liability to settle at the time it settled with the homeowners.

¶ 32 Finally, we note that the result sought by Rose would defeat the "underlying purpose" of the contribution act — i.e., to permit the equitable apportionment of damages among the tortfeasors responsible for those damages. *Kussman*, 706 P.2d at 778. Permitting Rose's settlement and release to discharge its contribution liability to Hansen would effectively leave Hansen responsible for paying over 89% of the jury verdicts, even though it was found only 18% at fault by the arbitrator (and only 15% at fault by the jury). Rose would be responsible for satisfying only about 11%, even though it was found 30% at fault by the jury (and 20% at fault by the arbitrator).

¶ 33 Although section 13-50.5-105 was formulated to encourage settlement, *Kussman*, 706 P.2d at 782, adopting Rose's position would not encourage settlement given the circumstances of this case. Rose waited over four years after it was brought into this case before settling with the homeowners, after both an arbitration and a

jury trial had been completed, after much litigation addressing the scope of the judgment, and after the entry of judgments carefully determining liability and apportioning fault among the parties. Rather than encouraging settlement in lieu of costly litigation, accepting Rose's view would encourage a tortfeasor to avoid settlement for years and then to take advantage of its joint tortfeasor's satisfaction of their common liability as determined by extensive litigation.[4]

¶ 34   Given all this, the district court correctly concluded that section 13-50.5-105(1)(b) did not shield Rose from contribution liability to Hansen.

### 3. Due Process

¶ 35   Rose contends that the contribution judgment violates its right to due process because the district court held Rose to the

---

[4] According to Rose, to hold that *no* postjudgment release may discharge a settling tortfeasor's contribution liability under section 13-50.5-105(1)(b) would contradict the statute's plain language, the legislature's intent, and logic.  But we do not go so far.  For the reasons articulated above, we merely conclude that Rose's settlement and release did not discharge its contribution liability to Hansen under the distinct circumstances of this case.

18

arbitrator's findings even though it did not have a full and fair opportunity to litigate damages in the arbitration.

¶ 36 We agree that Rose is not bound by the arbitration judgment because it was not a party to the arbitration, but we disagree that the court bound Rose to the arbitrator's findings. Instead, the court held Rose to only the jury verdicts when determining Rose's joint liability with Hansen. As to each lot, the joint liability included no more than the damages found by the jury, and it sometimes included fewer damages (whenever the arbitration award was less than the jury verdict). As a result, Rose's joint liability was around $5.9 million even though the jury verdicts totaled over $6.6 million. So, Rose is mistaken in asserting that the court attempted to bind Rose to the damages awarded by the arbitrator.

¶ 37 Further, when calculating Rose's contribution liability, the court used only the joint liability amount and Rose's percentage of fault *as found by the jury*. The court applied the jury finding that Rose was 30% at fault to the joint liability of $5.9 million, yielding $1,774,369.91 in contribution liability to Hansen.

This result comports with due process. Under the court's decision, Rose's joint liability equaled $5,914,566.37, and its

separate liability to the homeowners amounted to $698,548.93. Not surprisingly, these figures add up to the total amount of the jury verdicts as determined by the court ($6,613,115.30).[5] Thus, Rose was not held liable for more than the jury awarded. And, when the dust settled, Rose owed Hansen $1,774,369.91, after having paid the homeowners around $1 million to settle the remaining $698,548.93 owed under the jury verdicts as well as other outstanding monetary claims. The homeowners also waived their rights to appeal the judgment on the jury verdicts.

¶ 38    Accordingly, we do not discern a due process violation.

### III. Conclusion

¶ 39    The judgment is affirmed.

JUSTICE MARTINEZ and JUDGE MILLER concur.

---

[5] We take these figures from Attachment A to the judgment on the jury verdicts.