Barbara J. KUSSMAN, Petitioner,

v.

CITY AND COUNTY OF DENVER, Respondent.

No. 83SC214.

Supreme Court of Colorado, En Banc.

Sept. 30, 1985.

Rehearing Denied Oct. 21, 1985.

E. Gregory Martin, Martin & Snyder, Boulder, and Debra A. Halperin, Dominick & Halperin, Boulder, for petitioner.

Stephen H. Kaplan, Denver City Atty., Carl R. Mangino, Asst. City Atty., Denver, for respondent.

Bennett S. Aisenberg, Denver, for amicus curiae Colorado Trial Lawyers Ass'n.

Richard W. Laugesen, Denver, amicus curiae.

DUBOFSKY, Justice.

We granted certiorari in *Kussman v. City and County of Denver*, 671 P.2d 1000 (Colo.App.1983), to consider whether a tortfeasor found liable for less than the full amount of the plaintiff's damages is entitled to have deducted from its liability the amount paid in settlement to the plaintiff by another tortfeasor responsible for the same injury. The court of appeals held that the Uniform Contribution Among Tortfeasors Act (Act), §§ 13–50.5–101 to –106, 6 C.R.S. (1984 Supp.), requires a deduction for the settlement amount. We disagree and reverse.

I.

On September 18, 1977, the plaintiff's van collided with a fire truck owned by the City and County of Denver (city) at an intersection in Denver. At the time of the collision, Janna Gray was driving the plaintiff's van and the plaintiff, Barbara Kussman, was a passenger in the van. The plaintiff commenced an action against the city in Denver District Court, alleging that the injuries she suffered in the collision were caused by the negligence of the driver of the fire truck, and that the city was liable for this negligence under the doctrine

of *respondeat superior.* The city, in its answer, claimed *inter alia* that Gray's negligence was the sole cause of the plaintiff's injury, and that Gray's negligence should be imputed to the plaintiff in order to defeat her claim. The city also joined Gray as a third-party defendant, alleging that it had suffered $2,055 in damages as a result of Gray's negligence.[1]

During trial, the plaintiff gave Gray a covenant not to sue in exchange for a payment of $35,000. The jury found that the city was 51% responsible for the accident and Gray 49%. *See* section 13–21–111, 6 C.R.S. (1973 & 1984 Supp.). The jury also imputed Gray's negligence to the plaintiff because the plaintiff owned the car in which she was a passenger. *See Moore v. Skiles,* 130 Colo. 191, 274 P.2d 311 (1954).[2] The jury assessed the city's damages at $2,000 and the plaintiff's damages at $164,737. By stipulation of the parties, the plaintiff's damages were reduced to $153,037 by deducting $11,700 that the plaintiff had received from her insurance carrier under her personal injury protection coverage. *See* § 10–4–713(1), 4 C.R.S. (1984 Supp.). Because the plaintiff had been found 49% at fault as a result of the negligence imputed from Gray, judgment was entered against the city in favor of the plaintiff for 51% of the plaintiff's total damages, or $78,048.

The city filed a motion to amend judgment, contending that it was entitled under the Act to set off Gray's $35,000 settlement with the plaintiff from the judgment amount of $78,048. The district court denied the motion. The court of appeals reversed, holding that the city was entitled to set off the amount of the settlement under section 13–50.5–105 of the Act, making the city liable to the plaintiff for $43,048 rather than $78,048. We disagree.

II.

The question in this case is whether Gray and the city are "liable in tort for the same injury" under section 13–50.5–105 in a manner that permits the city to set off from its liability the $35,000 Gray paid in consideration for the covenant not to sue. Section 13–50.5–105 provides:

(1) When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

(a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

(b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

In order to interpret the phrase "liable in tort for the same injury," we must look at the language and policies of the Act as a whole.

The underlying purpose of the Act is to permit the equitable apportionment of damages among the tortfeasors responsible for those damages. *National Farmers Union Property and Casualty Co. v. Frackelton,* 662 P.2d 1056, 1058 (Colo.1983); *Hayon v. Coca-Cola Bottling Co.,* 375 Mass. 644, 378 N.E.2d 442, 445 (1978); Uniform Contribution Among Tortfeasors Act, Commissioners' Prefatory Notes, 12 U.L.A. 59–60 (1975). Towards this end, section 13–50.5–102 of the Act provides for contribution under the following circumstances:

(1) Except as otherwise provided in this article, where two or more persons become jointly or severally liable in tort for the same injury to person or property

---

1. The city's third-party claims for indemnity and contribution from Gray were dismissed prior to trial.

2. Under *Moore v. Skiles,* 130 Colo. 191, 274 P.2d 311 (1954), the owner-passenger is presumed to have the right and ability to control the actions of the guest-driver, and the driver's negligence may be imputed to the owner. The plaintiff does not challenge the imputation of Gray's negligence to her.

or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.

(2) The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is compelled to make contribution beyond his own pro rata share of the entire liability.

The "pro rata share" of damages assigned to each tortfeasor is equal to the degree of fault assigned to the tortfeasor by the jury. § 13–50.5–103.[3] The Act's aim is to ensure that no tortfeasor is compelled to pay more than its appropriate share of the damages as measured by the degree of fault assigned to it by the jury. Where a tortfeasor pays more than its share, it is entitled to contribution from other tortfeasors to the extent of excess payment. Section 13–50.5–105, providing for reduction of the judgment entered against tortfeasors to the extent of the settlement amount paid by tortfeasors who have been released, furthers this aim by ensuring that a tortfeasor who has not settled will not bear the full burden of damages simply because another tortfeasor has settled. See Uniform Contribution Among Tortfeasors Act § 4, Commissioners' Comment, 12 U.L.A. 99.

■ In our view, the Act's policy of equitably distributing damages is best served in this case by not deducting the amount paid by Gray in settlement from the judgment against the city. The city was found 51% at fault and judgment was rendered against it for 51% of the plaintiff's damages. Deducting Gray's settlement figure from the judgment rendered against the city would reduce the city's liability below its fair share as measured by fault and present the city with a windfall.

The city argues that this conclusion is incorrect because, had Gray been joined as a defendant by the plaintiff in the original suit, Gray would have been liable for 49% of the $78,048 liability of the city. Under this hypothesis, the $35,000 settlement figure, if deducted from the judgment against the city, would not be a windfall, but rather would represent Gray's share, as a defendant, of the $78,048 in damages. The city urges the following analysis: If Gray had been joined as a defendant, the city and Gray would have been jointly and severally liable for the full $153,000 in damages. However, the city still would have been able to impute Gray's negligence to the plaintiff. At the same time, Gray would not have been able to do so because a driver cannot impute his own negligence to a passenger-owner as a defense to the passenger's claim against the driver for negligence. Sommermeyer v. Price, 198 Colo. 548, 552, 603 P.2d 135, 138–39 (1979). Therefore, the city contends, the city would have been jointly and severally liable with Gray for $78,048 of the damages only, while Gray, unable to impute her negligence to the plaintiff, would be individually liable for the remainder of the damages. Because the city thus would have been liable for only 51% of the $78,048, a judgment against it for the entire amount, according to the city, would force payment of "more than [the city's] pro rata share of the common liability" and entitle it to contribution from Gray under section 13–50.5–102(2). The city concludes that because it would be eligible for contribution from Gray had she been joined as a defendant, it is eligible here to deduct Gray's settlement amount from the judgment against it.

We reject this argument. It is true that section 13–50.5–102(2) states that a tort-

---

**3.** Section 13–50.5–103 provides:
 When there is a disproportion of fault among joint tortfeasors, the relative degrees of fault of the joint tortfeasors shall be used in determining their pro rata shares solely for the purpose of determining their rights of contri-

bution among themselves, each remaining severally liable to the injured person for the whole injury as at common law.
 See also Act of July 1, 1985, ch. 125, 1985 Colo.Sess.Laws 575.

feasor who has paid more than his "pro rata share of the common liability" may recover contributions from the other tortfeasors for the amount paid in excess of the pro rata share. However, the city's $78,048 share of damages could not be viewed as a "common liability" of the city and Gray within the meaning of section 13–50.5–102(2), even under the analysis urged by the city. The term "common liability" must be interpreted in light of the final sentence of section 13–50.5–102(2): "No tortfeasor is compelled to make contribution beyond his own pro rata share of the *entire liability.*" (emphasis supplied). The city's pro rata share of the entire liability was 51%, which was more than Gray's 49% pro rata share of the entire liability. Therefore, under section 13–50.5–102(2), Gray could not have been required to contribute anything towards the city's 51% share of damages once she had discharged, either through contribution or direct payment to the plaintiff, her own 49% share of the entire damages.

 · Moreover, other language in the Act convinces us that a tortfeasor's proportionate share of liability cannot be considered a "common liability" where, as here, that share of liability has been severed from the entire liability arising from the plaintiff's injury. A "common liability" giving rise to a right of contribution exists only when tortfeasors are "jointly or severally liable in tort for the same injury." § 13–50.5–102(1). This latter phrase denotes a situation in which each tortfeasor may be held liable for the entire damages arising from a single injury. *Miller v. Singer,* 131 Colo. 112, 279 P.2d 846 (1955); *see also ICI America, Inc. v. Martin-Marietta Corp.,* 368 F.Supp. 1148, 1151 (D.Del. 1974) (predicate for contribution under Act is that two or more persons are legally liable for same injury); *Walker v. Patterson,* 325 F.Supp. 1024, 1026 (D.Del.1971) (same); *Rowe v. John C. Motter Printing Press Co.,* 273 F.Supp. 363, 365 (D.R.I. 1967) (same); *Cacchillo v. H. Leach Machinery Co.,* 111 R.I. 593, 305 A.2d 541,

542–43 (1973) (same). Here, the city, taking advantage of the comparative negligence law, section 13–21–111, defended itself by imputing Gray's negligence to the plaintiff; as a result, the liability for the plaintiff's injury was divided into two independent components: the city's liability and the plaintiff's liability. Once the liability was divided according to fault and judgment rendered against the city for no more than its independent portion of the liability to the plaintiff, the predicate for contribution—a joint or several liability for the entire damages resulting from the plaintiff's injury—was erased. In other words, the city cannot escape its joint and several liability for the entire damages here by claiming that the liability may be properly apportioned between the plaintiff and itself, and at the same time claim that the independent portion of liability attributable to the city remains a "joint and several liability" for purposes of contribution. This conclusion is consonant with the very premise of the Act—that equity compels contribution only where a tortfeasor is held liable for more than its fair share of damages. Uniform Contribution Among Tortfeasors Act, Commissioners' Prefatory Note, 12 U.L.A. 60.

In addition, not deducting the settlement amount from the judgment here comports with goals of the Act other than the equitable distribution of damages among tortfeasors. First, under the Act, joint and several liability is retained; each tortfeasor remains liable for all damages incurred by the plaintiff to the extent that other tortfeasors are insolvent or judgment-proof. § 13–50.5–103; *National Farmers Union,* 662 P.2d at 1059; *Mountain Mobile Mix, Inc. v. Gifford,* 660 P.2d 883, 889 (Colo. 1983); *see also Martinez v. Stefanich,* 195 Colo. 341, 577 P.2d 1099 (1978) (retaining joint and several liability under comparative negligence act). The retention of joint and several liability ensures that the plaintiff will be fully compensated for his or her injury, and that the risk of an insolvent tortfeasor falls upon the other tortfeasors rather than upon the plaintiff. *National*

*Farmers Union,* 662 P.2d at 1059; *Mountain Mobile Mix,* 660 P.2d at 889; *Martinez,* 195 Colo. at 343, 577 P.2d at 1100–01.

Refusing to deduct Gray's settlement amount from the judgment against the city serves the Act's overriding policy of providing full compensation for the plaintiff's injuries. The plaintiff here was deprived of her right to collect 49% of her damages from the city because of the negligence imputed to her; simultaneously, she surrendered her right to collect those damages from Gray in exchange for $35,000.[4] Deducting that $35,000 from the judgment against the city would deprive the plaintiff of the benefit she received in exchange for Gray's 49% share of the damages and diminish the remaining damages owed by the city by almost half. Therefore, reduction of the judgment against the city would not only present the city with a windfall, but would do so to the plaintiff's detriment.[5]

Further, the structure and history of the Act evince an intent to encourage settlement of claims even when the settlement results in an inequitable distribution of damages among tortfeasors. The original 1939 Act, as promulgated by the National Conference of Commissioners on Uniform State Laws, provided that a settlement released the settling tortfeasor from contribution liability only if the release required the damages recoverable from the remaining tortfeasors to be reduced by the "pro rata share of the released tortfeasor." Uniform Contribution Among Tortfeasors Act of 1939, § 5, 12 U.L.A. 58. This provision aimed at ensuring an equitable distribution of damages; the nonsettling tortfeasors would not be required to pay any portion of the settling tortfeasor's pro rata share. Uniform Contribution Among Tortfeasors Act, Commissioners' Comment, 12 U.L.A. 99. However, under the 1955 version of the Act adopted in Colorado, the

---

**4.** Under *Sommermeyer v. Price,* 198 Colo. 548, 603 P.2d 135 (1979), imputation of negligence as a defense is available only to a third party. Therefore, Gray could not impute her own negligence to the plaintiff, and the plaintiff would have been able to sue Gray. The plaintiff bargained away the right to sue Gray in the covenant not to sue.

**5.** We recognize that in other cases the rule we adopt today may permit the plaintiff to recover an amount greater than the total damages assessed by the jury. For example, if the plaintiff in this case had received $100,000 in settlement from Gray, this amount when combined with the $78,048 judgment against the city would have yielded a recovery greater than the plaintiff's total damages assessed by the jury. For a number of reasons, under the Act there should be no reduction of the judgment even in this situation. First, the nonsettling tortfeasor in such a case would pay no more than its proportionate share of the damages; as soon as it made any payment in excess of this amount it would be permitted to deduct the settlement amount from the judgment against it up to the amount it is required to pay in excess of its fair share of the liability. *Cf. Shantz v. Richview, Inc.,* 311 N.W.2d 155 (Minn.1980) (refusing to deduct settlement from judgment where judgment tortfeasor liable only for its proportionate share of damages, even though settling tortfeasor found not liable at all; judgment tortfeasor cannot complain of windfall to plaintiff so long as it is not liable for more than its fair

share of damages); *Clemtex, Ltd. v. Dube,* 578 S.W.2d 813 (Tx.Ct.Civ.App.1979) (reaching same result). Second, the settling tortfeasor would have made its payment aware of the risk that it might be paying more than a jury would ultimately require; this is the risk inherent in all settlements. As borne out in this case, the plaintiff always takes the opposite risk, that the settlement will amount to less than the ultimate jury award. Courts have never attempted to redress the inequities that appear in settlements when viewed with the aid of hindsight; otherwise, settlements would not be final and parties would be reluctant to settle. Finally, a contrary result would discourage settlements in another way: the nonsettling tortfeasor would pay less than its proportionate share of damages after the settlement amount is deducted, and tortfeasors would have an incentive not to settle, hoping that intransigence would be rewarded when another tortfeasor settled for an amount in excess of its true liability. *See Leger v. Drilling Well Control, Inc.,* 592 F.2d 1246, 1250–51 (5th Cir.1979) (refusing to deduct settlement in excess of settler's liability from pro rata share of remaining tortfeasor on ground that contrary result would reward refusal to settle). In light of these considerations, we believe that a refusal to reduce the judgment by the settlement amount is justified under the Act even if it results in overcompensation to the plaintiff, particularly since a contrary rule would defeat, in cases such as the present one, the Act's overriding goal of ensuring full compensation.

settling tortfeasor is always relieved from contribution liability if the release or covenant not to sue is given in good faith; the claim against the nonsettling tortfeasors is reduced only by the consideration paid for the release or covenant not to sue, or by an amount stated in the settlement, whichever is greater. § 13–50.5–105. Combined with the retention of the joint and several liability rule, this provision means that nonsettling tortfeasors may be forced to bear more than the portion of damages attributable to their relative degree of fault.

Despite the potential for an inequitable result, section 13–50.5–105 as it currently exists was formulated to encourage settlements. According to the Commissioners' Comment to section 4 of the 1955 Act, plaintiffs had proved unwilling to settle under the 1939 Act because they had no way of knowing in advance the exact amount of the "pro rata share" they were giving up. 12 U.L.A. at 99. At the same time, tortfeasors were reluctant to settle if the release provided for the reduction of the claim in a fixed amount, for then they remained exposed under the 1939 Act to contribution liability in an uncertain amount. *Id.* Therefore, deeming the encouragement of settlements to be a more important public policy than the equitable distribution of losses among tortfeasors, the Commissioners amended the Act into its current form. *Id.* at 100; *Sobik's Sandwich Shops, Inc. v. Davis,* 371 So.2d 709, 711–12 (Fla.App.1979); *Bishop v. Klein,* 380 Mass. 285, 402 N.E.2d 1365, 1371 (1980); *see also Davis v. Flatiron Materials Co.,* 182 Colo. 65, 71, 511 P.2d 28, 32 (1973) (Colorado public policy favors settlements provided they are fairly reached).

Not deducting the settlement amount from the judgment against the city promotes the Act's goal of encouraging settlements. If the plaintiff knew that any settlement reached would be deducted from the proportionate share owed to the plaintiff by another tortfeasor, the plaintiff would be less likely to settle. Similarly, tortfeasors might refuse to settle, hoping that their just share of damages would be reduced by the settlement amount paid by another tortfeasor.

■ In light of the Act's policies, we hold that a settling and a nonsettling tortfeasor are "liable in tort for the same injury" within the meaning of section 13–50.5–105 only when judgment is rendered against the nonsettling tortfeasor for an amount greater than its proportionate share of damages as measured by its degree of fault. Where a tortfeasor is found liable for an amount in excess of its proportionate share of damages, it may deduct the settlement amount paid by another tortfeasor from its liability up to the judgment amount in excess of its proportionate share of damages. However, where judgment is rendered against a tortfeasor for no more than its proportionate share of liability, it is not eligible for deduction of the settlement amount from the judgment. Therefore, the court of appeals erred in deducting the amount paid by Gray in settlement from the judgment against the city.

Judgment reversed and case remanded to the court of appeals with directions to reinstate the district court judgment.

NEIGHBORS, J., specially concurs, and ERICKSON, J., joins in the special concurrence.

KIRSHBAUM, J., does not participate.

NEIGHBORS, Justice, specially concurring:

I concur in the judgment of the court. However, I write separately to express my views regarding the applicability of the Uniform Contribution Among Tortfeasors Act (Act), sections 13–50.5–101 to –106, 6 C.R.S. (1984 Supp.), to this case and *Perlmutter v. Blessing,* 706 P.2d 772 (Colo. 1985), both of which are announced today.

## A.

My analysis begins with the premise that the purpose of the Act is to permit the equitable apportionment of a claimant's damages among the joint tortfeasors whose conduct combined to cause those damages. § 13–50–105, 6 C.R.S. (1984 Supp.). *See Mountain Mobile Mix, Inc. v. Gifford,* 660 P.2d 883, 889 (Colo.1983) (the Act "provides for the equitable apportionment of damages among tortfeasors according to relative degrees of fault"), and *National Farmers Union Property & Casualty Co. v. Frackelton,* 662 P.2d 1056, 1058 (Colo.1983) (the Act "was designed to remedy a harsh common law rule.... [It permits] the shifting of losses equitably among those tortfeasors who cause the damages."). Thus, the effect of the Act on a claimant's right to recover damages from joint tortfeasors is not diminished.

The Act affects claimants only in three ways. First, the principle of joint and several liability is retained by the Act so that each tortfeasor is responsible to the claimant for the full amount of the judgment reflecting the fact finder's award of damages. *Mountain Mobile Mix,* 660 P.2d at 889; *Frackelton,* 662 P.2d at 1059. Second, the Act abrogates the common law rule that the release of one joint tortfeasor releases the remaining joint tortfeasors from all further liability to the claimant. *See, e.g., Cingoranelli v. St. Paul Fire &*

*Marine Casualty Insurance Co.,* 658 P.2d 863 (Colo.1983); *Price v. Baker,* 143 Colo. 264, 352 P.2d 90 (1959) (common law rule that release of one releases all). Third, the Act codifies the Colorado principle that monies received by the claimant from a joint tortfeasor in return for a covenant not to sue or execute against that tortfeasor must be credited against the damages assessed against the non-settling tortfeasors.[1] § 13–50.5–105, 6 C.R.S. (1984 Supp.). *See also Cox v. Pearl Investment Co.,* 168 Colo. 67, 450 P.2d 60 (1969).

The Act does not define the term "joint tortfeasor." Prosser states that a joint tort is one in which "two or more persons may be joined as *defendants* in the same action at law." W. Prosser, *The Law of Torts* § 47, 293 (4th ed. 1971) (emphasis added). A joint tortfeasor is defined in *Black's Law Dictionary* as follows: "Where two or more persons owe to *another* the same duty and by their *common neglect* such other is injured, the tort is 'joint.'" *Black's Law Dictionary* 973 (4th ed. 1957) (emphasis added).

## B.

With these principles in mind, I turn first to a discussion of *Kussman.* In my view, the threshold inquiry is whether Janet Gray (Gray) remained a joint tortfeasor with the City of Denver (City) vis-a-vis Barbara Kussman (plaintiff or Kussman) un-

1. The question of whether the amount of the settlement should be deducted from the jury's verdict or from the damage figure remaining after P.I.P. benefits, comparative negligence percentages, statutory damage limits, and other deductions or credits are considered is not an issue presented in these cases. The authorities which have addressed that question are in conflict. *Compare, e.g., Truesdale v. South Carolina Highway Dep't,* 264 S.C. 221, 213 S.E.2d 740, (1975) (first reduce the award by the settlement then reduce it by the comparative negligence percentage); *and Jackson v. Barton Malow Co.,* 131 Mich.App. 719, 346 N.W.2d 591 (1984) (subtract the settlement figure from the award prior to subtracting the comparative negligent percentage); *with, e.g., Lemos v. Eichel,* 83 Cal. App.3d 110, 118–19, 147 Cal.Rptr. 603, 606–07 (1978) ("the correct procedure is to apply each

plaintiff's contributory fault percentage reduction to the total damage and reduce the resulting figure by the amount of that plaintiff's pretrial settlement"); *Scott v. Cascade Structures,* 100 Wash.2d 537, 673 P.2d 179, 183 (1983) (same); *Gomes v. Brodhurst,* 394 F.2d 465 (3d Cir.1967) (same); *Theobald v. Angelos,* 44 N.J. 228, 208 A.2d 129 (1965) (same); *Pierringer v. Hoger,* 21 Wis.2d 182, 124 N.W.2d 106 (1963) (same).

For a more in depth discussion of the amount of damages the plaintiff can recover from nonsettling tortfeasors after one or more tortfeasors settles with the plaintiff prior to trial, see J. Fleming, *Report to the Joint Committee of the California Legislature on Tort Liability on the Problems Associated with American Motorcycle Ass'n v. Superior Court,* 30 Hastings L.J. 1465, 1494–98 (1979).

der the Act after Gray's negligence was imputed to the plaintiff. The other side of the coin is whether Kussman can assume the status of a joint tortfeasor after the doctrine of imputed negligence was invoked by the City.

Kussman brought suit only against the City. The City, in turn, filed a third-party complaint against Gray in which it alleged that Gray's negligence should be imputed to Kussman. Hence, when the City chose to submit to the jury the issues concerning Gray's negligence and the imputation of that negligence to Kussman, it elected its remedy. In these circumstances, a joint tortfeasor may either take advantage of a legal and factual theory of imputation or claim a credit for the settlement under section 13–50.5–105, 6 C.R.S. (1984 Supp.). Having chosen the former path, the negligence of Gray was imputed to Kussman.

While the principle has never been precisely articulated by this court, it is clear that a plaintiff can never be a joint tortfeasor with regard to the plaintiff's own damage claim. *See Frackelton,* 662 P.2d at 1063 ("It is only necessary that 'two or more persons become jointly or severally *liable in tort* for the same injury to person or property.' ") (emphasis added); *Mountain Mobile Mix,* 660 P.2d at 889 ("Historically, the doctrine of joint and several liability places the full obligation to pay damages on each and every *defendant....* [The Act] opted to retain this rule.") (emphasis added); *Miller v. Singer,* 131 Colo. 112, 116, 279 P.2d 846, 848 (1955) ("[A]ll those who actively participate in any manner in the commission of a tort are jointly and severally liable therefor....").

The effect of imputing Gray's negligence is to apportion 49 percent contributory negligence to Kussman and 51 percent negligence to the remaining tortfeasor, the City. Any other interpretation of the facts and the law confuses the doctrine of comparative negligence with that of contribution. The net result is no different than a case in which the claimant herself is negligent rather than having a third party's negligence imputed to her. I know of no authority which adopts the rule that a claimant can be characterized as a joint tortfeasor with others concerning the claimant's damages. The logical extension of such a holding would permit a claimant to sue himself or herself. This extension would be contrary to the generally accepted notion that a plaintiff's negligence relates only to a failure to use reasonable care for his or her own protection, while a defendant's negligence relates to a lack of such care for the safety of others. *American Motorcycle Association v. Superior Court,* 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899 (1978) ("[I]nsofar as the plaintiff's conduct creates only a risk of self-injury, such conduct, unlike that of a negligent defendant, is not tortious."). *Id.,* 578 P.2d at 906. W. Prosser, *The Law of Torts* § 65, 418 (4th ed.1971).

At least one court has recognized this comparative negligence issue involving imputed negligence. In *Laubach v. Morgan,* 588 P.2d 1071 (Okla.1978), the court noted:

> We do not deal here with such problems as imputed or vicarious liability, where negligence of two or more tortfeasors is treated as a unit, so that so far as the comparative negligence doctrine is concerned, it is the same as if only *one* defendant is involved.

*Id.* at 1074 n. 13 (emphasis added). Thus, the negligence of persons in an imputed negligence relationship ought to be treated as a unit, whether they are plaintiffs or defendants, for purposes of comparative negligence. This view is consistent with the combined negligence of defendants rule adopted by this court in *Mountain Mobile Mix,* 660 P.2d 883 (Colo.1983). The observation of the court in *Laubach* leads me to conclude that the Act has no application in this case because, as a result of the "unit" rule, only one defendant is involved. Here, instead of the imputation doctrine applying

between defendants, the City elected to seek its application between a third-party defendant and the plaintiff. When the trial court imputed Gray's negligence to Kussman, Gray's negligence became that of Kussman.

The dispute over how much money Kussman is entitled to receive and who shall pay what percentage is answered simply. The inquiry is resolved by a consideration of the principles of comparative negligence. Kussman is deemed 49 percent at fault. Therefore, she may only receive up to 51 percent of the damages fixed by the jury from the City, the only defendant recognized after imputation of negligence. The City cannot be forced to pay more than 51 percent of the total damages; not because of the pro rata requirements of the Act, but because of the Colorado principles governing comparative negligence.

In addition, a predicate for contribution under the Act is that two or more persons are legally liable for the same injury. *I.C.I. America, Inc. v. Martin Marietta Corp.*, 368 F.Supp. 1148, 1151 (D.Del.1974); *Walker v. Patterson*, 325 F.Supp. 1024, 1026 (D.Del.1971); *Rowe v. John C. Matter Printing Co.*, 273 F.Supp. 363, 365 (D.R.I. 1967); *Cacchillo v. H. Leach Machinery Co.*, 305 A.2d 541, 543 (R.I.1973). It follows then that once negligence has been imputed from one tortfeasor to the plaintiff, the remaining tortfeasor has no one from whom to seek contribution.

In summary, the imputation of Gray's negligence to the plaintiff at the request of the City terminated the joint tortfeasor relationship between Gray and the City. Moreover, the imputed negligence does not render Kussman a joint tortfeasor. Thus, the Act is inapplicable and the City is not entitled to any credit for the amount of the settlement.

## C.

In contrast to *Kussman*, I believe the Act applies in *Perlmutter* and I agree with the majority's conclusion that the amount of the settlement should be deducted from the total damages.

At first blush, the result in *Perlmutter* appears to be unfair. Such is not the case, however. The judgment against Harmony Homes was $67,037. Of that amount, $44,427 in damages were assessed as the joint and several liability against all of the joint tortfeasors. Accordingly, the claimants could have pursued efforts to collect the $44,427 judgment from just one of the joint tortfeasors. If one of those tortfeasors paid the entire joint and several judgment, that tortfeasor would have no remedy against his fellow tortfeasors absent the Act. *Mountain Mobile Mix*, 660 P.2d at 889; *Frackelton*, 662 P.2d at 1058. Here, one of the joint tortfeasors settled with the claimants by payment of $30,000 which released it from all liability to the claimants. The release discharged the settling tortfeasor's liability to the plaintiffs not only for the $67,000 in damages, but also from any exposure to execution on the joint and several judgment. § 13–50.5–105, 6 C.R.S. (1984 Supp.). Thus, the trial court properly ·deducted the settlement amount from the total damage award. The non-settling tortfeasors are, therefore, liable for $37,037, approximately $7,000 less than the limit of their exposure as reflected in the joint and several judgment. This application of the statute gives full and complete recognition to the Act. First, the claimant's damage award is unaffected as required by section 13–50.5–102(2), 6 C.R.S. (1984 Supp.). Second, the non-settling tortfeasors have obtained a credit of over $7,000 against their liability as mandated by section 13–50.5–105(1)(a), 6 C.R.S. (1984 Supp.).

I am authorized to say that Justice ERICKSON joins me in this special concurrence.