Joseph **PERLMUTTER** and **Rosemary Perlmutter**, Petitioners,

v.

Frederick P. **BLESSING** and **Peak Engineering, Inc.**, a Colorado Corporation, Respondents.

No. 83SC399.

Supreme Court of Colorado,
En Banc.

Sept. 30, 1985.

Patric J. LeHouillier, Barash & LeHouillier, Colorado Springs, for petitioners.

Steven J. Barr, Colorado Springs, for respondents.

DUBOFSKY, Justice.

In *Perlmutter v. Harmony Homes, Inc.*, 677 P.2d 381 (Colo.App.1983), a tortfeasor who was found individually liable for one of the plaintiffs' injuries, and jointly and severally liable with another tortfeasor for another of the plaintiffs' injuries, reached a settlement with the plaintiffs before trial. Judgment was rendered against the tortfeasors for an amount including the damages arising from both injuries. The court of appeals held that, under the Uniform Contribution Among Tortfeasors Act (Act), §§ 13–50.5–101 to –106, 6 C.R.S. (1984 Supp.), the entire settlement amount should be deducted only from the portion of the judgment representing the damages for which both tortfeasors are jointly and severally liable. We granted certiorari to consider the court of appeals' holding. We conclude that the settlement amount should be deducted from the total judgment amount rather than from the joint and several portion only, and, accordingly, we reverse the judgment of the court of appeals.

I.

In 1978, the plaintiffs, Joseph and Rosemary Perlmutter, purchased a newly constructed home from its builder, Harmony Homes, Inc. Subsequently, a retaining wall located on the plaintiffs' property partially collapsed, and water began to leak into their home through the foundation. The foundation had been designed by Frederick P. Blessing, an engineer and employee of Peak Engineering, Inc. The plaintiffs filed a complaint in El Paso County District Court against Harmony Homes, Blessing, Peak Engineering and a number of other defendants who the plaintiffs believed were responsible for the damage to their home. The plaintiffs alleged that Harmony Homes was negligent in its construction of the retaining wall and foundation and had breached both an implied warranty of fitness for habitation and an express warranty to repair any defect within one year after closing. The plaintiffs further alleged that Blessing had been negligent in designing the foundation and that Peak Engineering, as Blessing's employer, was liable for this negligence under principles of *respondeat superior*.

Trial was to the court. Following the presentation of testimony, the court found that Harmony Homes was negligent in its construction of the retaining wall, foundation and drainage system and had breached an implied warranty of habitability. The court found that damages arising from the faulty construction amounted to $67,037. The court further found that Blessing and Peak Engineering had negligently designed the foundation and drainage system and assessed damages against these defendants at $46,027. According to the court, this amount represented a joint and several liability of Harmony Homes, Blessing and Peak Engineering, and was included in the $67,037 damages attributable to Harmony Homes. Accordingly, the court entered judgment against Harmony Homes, Blessing and Peak Engineering for $67,037. The court determined that the other defendants were not liable.

Blessing and Peak Engineering filed a motion for new trial, contending that the damages awarded were excessive. The court agreed that certain damages should not have been awarded and reduced the

joint and several liability portion of the award to $44,427. Blessing and Peak Engineering also alleged that prior to trial Harmony Homes had received a release from the plaintiffs in exchange for payment of $30,000. It was undisputed that under the Act this settlement relieved Harmony Homes from any further obligation to pay the joint and several portion of the award. § 13–50.5–105(1)(b). However, Blessing and Peak Engineering argued that the Act mandated deduction of the settlement amount from the $46,027 joint and several liability of Harmony Homes, Blessing, and Peak Engineering. The court disagreed, interpreting the Act to require that the $30,000 paid in settlement by Harmony Homes be deducted from the total judgment of $67,037, rather than from the joint and several portion of the judgment alone. The court accordingly entered judgment for $37,037. Because Harmony Homes had no further liability to the plaintiff or to the other defendants, and because the judgment amount was less than Blessing and Peak Engineering's joint and several liability to the plaintiffs, the effect of the court's ruling was that Blessing and Peak Engineering alone would be liable for $37,037.

The court of appeals reversed, holding that under the Act the settlement funds must be set off against the joint and several liability and could not be applied to the portion of the judgment representing the individual liability of Harmony Homes. The court of appeals reduced the liability of Blessing and Peak Engineering to $14,427. We believe that the district court's resolution was correct, and we reverse the judgment of the court of appeals.[1]

## II.

Section 13–50.5–105 provides for the set off of settlement funds paid by one tortfeasor from the claim against other tortfeasors jointly or severally liable for the same injury:

(1) When a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

(a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

---

**1.** There is a third option, adopted by neither the district court nor the court of appeals, for allocation of the settlement funds. The funds could be apportioned between the individual liability and the joint and several liability in the following manner: the settlement amount would be set off first against Harmony Homes' pro rata share of the joint and several liability, with any remaining funds set off against Harmony Homes' individual liability. (Because the settlement relieved Harmony Homes of any further liability to the plaintiffs, the setoff from its individual liability has no practical effect.) This option would be particularly difficult to apply here because the district court explicitly refused to apportion fault among the defendants, ruling only that they were jointly and severally liable for $44,427 in damages. Therefore, we cannot tell what the pro rata shares of the defendants are. *See* § 13–50.5–103, 6 C.R.S. (1984 Supp.) (pro rata shares of tortfeasors determined by relative degree of fault). However, even assuming that we could determine the pro rata shares, this option is incompatible with the history and purposes of the Act. As we have explained today in *Kussman v. City and County*

*of Denver,* 706 P.2d 776, 781–782 (Colo.1985), the Act as originally promulgated in 1939 by the National Conference of Commissioners on Uniform State Laws provided for reduction of the claim against nonsettling tortfeasors by the pro rata share of the settling tortfeasor. However, this method of setoff was dropped in favor of reducing the remaining claim by a fixed settlement amount in the belief that the current method of setoff better advances the Act's goal of encouraging settlements. *Id.* at 781–782. Because the history of the Act evinces an intent to preclude any pro rata reduction of the claim against nonsettling tortfeasors, we do not adopt this method of setoff under § 13–50.5–105 in the present case. Moreover, such a method of allocating settlement funds would defeat the Act's goal of fully compensating plaintiffs. An apportionment of settlement funds between the individual and the joint and several liabilities would result in an award of less than the plaintiff's full damages in cases, such as this one, in which the amount of settlement is less than the sum of the settler's individual liability and pro rata share of the joint and several liability.

(b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

Where the only injuries involved in an action are those for which all tortfeasors are jointly or severally liable, the application of this section is clear: either the settlement amount or the amount provided for in the settlement document, whichever is greater, must be deducted from the total judgment against the remaining tortfeasors. Here, however, the judgment rendered comprises both an individual liability of the settling tortfeasor and a joint and several liability of the settling and nonsettling tortfeasors. Because the defendants were found "liable in tort for the same injury,"[2] i.e., for the damages resulting from the leaky foundation, it is clear that the statute has some application in this case. However, it is unclear whether the phrase "claim against the others" is intended under these circumstances to denote the entire judgment or solely the portion of the judgment representing the joint and several liability of the tortfeasors.[3]

■■■ Where, as applied here, statutory language is ambiguous or unclear, the statute must be interpreted to further the statutory purposes. *Mountain Mobile Mix, Inc. v. Gifford,* 660 P.2d 883, 885 (Colo. 1983). We believe that the district court's resolution, setting the settlement amount off from the entire judgment in this case, is the method of set off most closely in accord with the policies of the Act. First, section

13–50.5–105 states that any settlement agreement "does not discharge any of the other tortfeasors from liability ... unless its terms so provide." This provision reversed the common law rule that the release of one joint tortfeasor released all other joint tortfeasors. *Cingoranelli v. St. Paul Fire and Marine Insurance Co.,* 658 P.2d 863, 866 (Colo.1983). At the same time, the Act retains the rule of joint and several liability, so that each tortfeasor is liable for the whole of the common liability in the event that it cannot be collected from the other tortfeasors. § 13–50.5–103; *National Farmers Union Property and Casualty Co. v. Frackelton,* 662 P.2d 1056, 1059 (Colo.1983); *Mountain Mobile Mix,* 660 P.2d at 889. Further, the statute provides that the claim against the remaining tortfeasor will be reduced by a fixed amount either provided for in the settlement agreement or represented by the consideration paid in settlement, rather than by the pro rata share of the settling tortfeasor. § 13–50.5–105(1)(a). Taken together, these rules mean that a nonsettling tortfeasor will be liable for any part of the settling tortfeasor's pro rata share of damages that is greater than the amount paid in settlement. This result evinces a legislative intent to provide full compensation for the plaintiff even at the expense of equitable apportionment of damages among tortfeasors.

Setting off the settlement amount against the entire judgment will provide

---

**2.** In their petition for certiorari, the plaintiffs questioned whether the injurious result of the separate negligence of the defendants constituted the "same injury" under the Act. The defendants did not act in concert, but committed separate acts of negligence creating a harmful result in designing and constructing the foundation and drainage system. We did not grant certiorari on this issue because it was not raised properly before the trial court or the court of appeals. We note, however, that the Act refers repeatedly to "injury or wrongful death," implying that the term "injury" refers to the consequence of a tortious act or omission, such as wrongful death. *See Albert v. Dietz,* 283 F.Supp. 854 (D.Hawaii 1968); *Applegate v. Riggall,* 229 Ark. 773, 318 S.W.2d 596 (1958); *Wolfe v. Ford Motor Co.,* 386 Mass. 95, 434 N.E.2d 1008 (1982); *Neveroski v. Blair,* 141 N.J.Super. 365, 358 A.2d

473 (1976); *cf. Mastro v. Brodie,* 682 P.2d 1162, 1168 (Colo.1984) (term "injury" in statute of limitations for malpractice actions refers to legal injury: both physical consequences of malpractice and fact that consequences were the result of wrongful action). *But see Lasprogata v. Qualls,* 263 Pa.Super. 174, 397 A.2d 803 (1979).

**3.** Because the release was not included in the record before us, we are unable to determine whether the parties intended for the settlement funds to be applied to the various liabilities in any particular manner. We express no opinion about the effect an explicit agreement for set off of settlement funds would have under the circumstances presented here.

the plaintiffs here with the full damages to which they were entitled. Were the funds to be set off from the joint and several liability only, the plaintiffs would not receive compensation for that portion of damages attributable to Harmony Homes individually; the settlement and judgment together would represent only the joint and several portion of the total award. We refuse to adopt a construction of the Act that nullifies a portion of the judgment rendered in favor of the plaintiffs.

Moreover, as explained in *Kussman v. City and County of Denver,* 706 P.2d 776, 781–782 (Colo.1985), the Act is designed to encourage settlement, even when settlement may result in a tortfeasor paying more than its proportionate share of damages. *See Sobik's Sandwich Shops, Inc. v. Davis,* 371 So.2d 709, 711–12 (Fla.App. 1979); *Bishop v. Klein,* 380 Mass. 285, 402 N.E.2d 1365, 1371–72 (1980); Uniform Contribution Among Tortfeasors Act § 4, Commissioners' Comment, 12 U.L.A. 99–100 (1975). Here, deducting the settlement amount from the joint and several liability alone would discourage settlement: plaintiffs would refuse to settle, aware that the settlement amount would be applied to reduce the damages recoverable from the remaining tortfeasor.[4]

We believe the policies of the Act are best served by interpreting the "claim against the other tortfeasors" to comprise the entire judgment under the circumstances of this case. Therefore, the $30,000 settlement amount should be deducted from the entire $67,037 judgment.

Judgment reversed and case remanded to the court of appeals with directions to reinstate the district court judgment.

**4.** Although subordinate to the policies of fully compensating plaintiffs and promoting settlements, the equitable distribution of damages among tortfeasors remains one of the purposes of the Act and normally should be considered in any inquiry of this kind. *See Kussman,* at 778–779. However, consideration of this purpose does not advance the inquiry in the present case. Depending upon the amount of settlement, the amount of individual liability, and the degree of fault assigned to the parties in the case, both the court of appeals' method and the district court's method of setoff could result in

nonsettling tortfeasors paying either less or more than their pro rata shares of the joint and several liability. In contrast to the setoff methods adopted by the district court and court of appeals, a third method of setoff—the apportionment of settlement funds between the individual and joint and several liabilities—does have a foreseeable effect upon the equitable distribution of the joint and several liability. However, as explained in note 1, *supra,* this method of setoff is precluded by the history and purposes of the Act.