Robert E. ALLING, Robert G. Ernster, Paul F. Trost, Brian L. Zwetzig, Donald R. Giddens, and, Mary Lynn McCormick, Plaintiffs,

v.

AMERICAN TOOL AND GRINDING COMPANY, INC., a Colorado Corporation, Harry J. Faircloth, and Peter A. Scognamillo, Defendants,

Norbert Vogler, Defendant, Judgment debtor, Judgment creditor for the use and benefit of the Plaintiffs,

Dynamic Manufacturing Company, Inc., Garnishee-Judgment debtor,

Martin Marietta Corporation, and Eastman Kodak Corporation, Garnishees,

and

Century Bank and Trust, Intervenor.

Civ. A. No. 79 k–1535.

United States District Court, D. Colorado.

Nov. 26, 1986.

James E. Mitchem, Mitchem & Mitchem, Denver, Colo. for plaintiffs.

Paul G. Goss, Denver, Colo., for Scognamillo.

Jay Stuart Radetsky, Denver, Colo., for Faircloth.

Larry Boris, Boris, Klueger, Nemkov & Jahde, Denver, Colo., for Dynamic Mfg., Inc.

John W. Weaver, West & Weaver, Denver, Colo., for Century Bank.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

### I.

### BACKGROUND

In early 1976, defendant American Tool and Grinding Company was formed by defendants Vogler, Scognamillo, and Faircloth. The concept of the business was the sale of distributorship packages as a business opportunity. The distributorship had three aspects. American Tool and Grinding would: (1) train distributors in the grinding of machine cutting tools, (2) provide each distributor a tool and cutter grinder with which to grind tools and cutters for machinists located in the distributor's territory, and (3) provide the distribu-

tor with cutting tools to sell to the customers who utilized the distributor's grinding service. In order to locate prospective purchasers of the distributorship package, American Tool placed advertisements in the business opportunity sections of newspapers.

Plaintiffs responded, individually, to the advertisements. Each was inexperienced in the business of grinding or sales of cutting tools. Their inexperience required them to rely upon the apparent experience and expertise of defendants in evaluating the viability of a distributorship. Relying on the descriptions of the business enterprise made by defendants, each of the plaintiffs executed a distributorship contract and paid the price for a distributorship, ranging from $13,500.00 to $16,500.00.

After receiving some training by American Tool and receiving tool and ·cutter grinders, plaintiffs devoted their time to grinding and to selling American Tool's products in their respective territories. By 1979, all of these distributorships had failed. Plaintiffs brought an action against defendants in the United States District Court in Arizona, alleging fraud, conspiracy, and breach of the distributorship agreements. This action was later transferred to this district.

Trial to the court occurred in this case in November of 1981. On June 7, 1982, I entered my findings of fact, conclusions of law, and order. I concluded each of the defendants committed fraud and had joined in a conspiracy to commit fraud with respect to the sale of the distributorship packages to plaintiffs. *Alling v. American Tool and Grinding Co., Inc.*, No. 79–K–1535, slip op. at 14 (D.Colo. June 7, 1982) (Findings of Fact, Conclusions of Law, and Order). Judgment was entered against defendants jointly and severally in the amount of $213,830.00 for actual damages and $849,020.00 for punitive damages.

Vogler, Scognamillo, and Faircloth then appealed this judgment. Scognamillo and Faircloth's appeals were denied as untimely. With respect to Vogler's appeal, the Tenth Circuit upheld the award for actual damages but vacated the punitive damage award as against Vogler, remanding for reconsideration of the amount of punitive damages. *Alling v. American Tool and Grinding Co., Inc.*, Nos. 82–1824 and 84–1685, Slip op. at 11 (10th Cir. March 28, 1985).

On June 27, 1986, after considering Vogler's punitive damages upon remand, I issued a second amended judgment. Under the second amended judgment, plaintiffs were awarded $213,830.00 in actual damages against all defendants, jointly and severally, and $849,020.00 in exemplary damages, just as before. This time, however, the exemplary damages were assessed only against Faircloth and Scognamillo, jointly and severally. Vogler, although now not liable jointly and severally with Faircloth and Scagnamillo for the $849,020.00 exemplary damages, was found to be *individually liable* to plaintiffs for $300,000.00 in exemplary damages. All of these damage awards include interest and costs.

While these determinations were being made, plaintiffs had been conducting concurrent settlement negotiations with Scognamillo. The negotiations culminated in an agreement which was submitted at trial as Exhibit C–101. The agreement provides that: if on May 31, 1990, Scognamillo pays to plaintiffs $100,000.00, then plaintiffs will, at that time, execute a release, or covenant not to sue. However, the agreement further provides that if Scognamillo should fail to make the $100,000.000 payment, then plaintiffs shall proceed in efforts to collect the entire unpaid balance of the judgment since Scagnamillo will not have been released from the judgment.

Various orders have been entered on behalf of the plaintiffs in order to obtain satisfaction of defendants' liability, including the default judgment of August 14, 1986, where plaintiffs have caused writs of garnishment to be served on Dynamic Manufacturing, Inc., Eastman Kodak, and Martin Marietta pursuant to the default judgment. Dynamic is indebted to Vogler while

Eastman Kodak and Martin Marietta are indebted to Dynamic.

Although an agreement between plaintiffs and Scognamillo has been made and final judgments have been entered, collection of the judgment has not been satisfied and this matter remains before me on two separate motions: (1) Defendant Vogler's Motion for New Trial and/or Motion to Amend Second Amended Judgment; and, (2) Plaintiffs' Motion for Disbursement of Funds and Other Relief.

Also, a totally new party, Century Bank and Trust, a Colorado Corporation, has submitted both a Motion to Intervene Under Rule 24(a), Fed.R.Civ.Proc., and an accompanying Complaint In Intervention. Century Bank is a creditor of garnishee, Dynamic Manufacturing Company, Inc. Dynamic is indebted to Vogler in the amount of $60,000.00, plus interest (6.18 per annum), for the use and benefit of plaintiffs in partial satisfaction of Vogler's liability, pursuant to the default judgment. Co-garnishees, Martin Marietta and Eastman Kodak, each are indebted to co-garnishee Dynamic in the amounts of $7,947.22 and $779.87, respectively. Century Bank, as a major creditor of Dynamic, claims it is adversely affected by the default judgment ordering garnishment of Dynamic. Centu-

ry Bank also asserts it is adversely affected indirectly by the garnishment of Eastman Kodak and Martin Marietta. Thus, Century Bank wishes to have its interests represented in this action. Accordingly, I granted the motion to intervene on September 30, 1986. I shall address the complaint in intervention and plaintiffs' response below.

## II.

### MOTION FOR NEW TRIAL AND/OR MOTION TO AMEND THE SECOND AMENDED COMPLAINT

Defendant Vogler seeks a new trial in this matter pursuant to Rule 59(a) and (e) [1] for a new trial and/or to amend the second Amended Judgment filed and entered on June 27, 1986. Vogler asserts I erred in refusing to order a setoff from the joint and several compensatory damages awarded in the Second Amended Judgment. He argues his liability for actual damages, jointly and severally shared with co-defendants Scognamillo and Faircloth ($213,830.00), should be reduced by the amount of consideration to be paid by Scognamillo ($100,000.00) for a release or a covenant not to sue in order to comply with Colo. Rev.Stat. § 13–50.5–105 (1986 Cum.Supp.).[2]

---

1. Rule 59(a) and (e) state in pertinent part:
    (a) A new trial may be granted to any and all parties and on any or all or part of the issues in an action in which there has been a trial by jury [or without a jury] for any reasons [existing at common law].

    .    .    .    .    .

    (e) A motion to alter or amend the judgment shall be served no later than ten days after entry of the judgment.
2. The Uniform Contribution Among Tortfeasors Act, Colo.Rev.Stat. § 13–50.5–102 (1986 Cum. Supp.) states in pertinent part:
    (1) Except as otherwise provided in this article, where two or more persons become jointly or severally liable in tort for the same injury to person or property ..., there is a right of contribution among them even though judgment has not been recovered against all or any of them.
    (2) The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share.

No tortfeasor is compelled to make contribution beyond his own pro rata share of the entire liability.
    (3) There is no right of contribution in favor of any tortfeasor who has intentionally, willfully, or wantonly caused or contributed to the injury ...
    (4) A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for injury ... is not extinguished by the settlement nor in respect to any amount paid in a settlement which was in excess of what was reasonable ...
    (6) This article does not impair any right or indemnity under existing law. Where one tortfeasor is entitled to indemnity and not contribution, and the indemnity obligor is not entitled to contribution from the obligee for any portion of his indemnity obligation.
According to the ensuing argument, Vogler relies principally upon the implicit policy of fundamental fairness purportedly contained in the last sentence of paragraph two: "No tortfeasor is compelled to make contribution be-

Compliance with the statute, according to Vogler, has not occurred for two reasons: (1) the terms of the Scagnamillo agreement, in light of the Second Amended Judgment, effectively cause Vogler to pay more than his "pro rata share" of the joint and several liability, and thus more punitive damages, and, (2) the agreement allows plaintiffs to circumvent the respective policy goals which compensatory and punitive damages were enacted to achieve. He also argues the judgment should be amended so as not to include plaintiffs' costs incurred subsequent to the opinion of the Tenth Circuit Court of Appeals in which they remanded the sole issue of Vogler's punitive damages to me.

Plaintiffs respond by setting forth the following gauntlet of arguments: (1) the consideration paid by the settling tortfeasor (Scognamillo) should be applied first toward his own liability, then any balance should be applied to reduce the common liability shared jointly and severally with non-settling tortfeasors; (2) the "agreement" is not, *as of yet,* a release or a covenant not to sue; (3) part of the agreement concerns plaintiffs' covenant not to sue Scognamillo pursuant to a wholly separate action against him and, therefore, should not be merged with this case; (4) Scognamillo's payment should first be applied to his individual punitive damages before being applied to his joint and several compensatory damages; (5) if the court applies the setoff to compensatory damages in the manner Vogler suggests, then it should increase Vogler's punitive damages because Vogler's punitive damages were determined by taking into account the existing damage award and Scognamillo's agreement; and, finally, (6) plaintiffs were the "prevailing parties" for the purposes of determining costs.

The motion for a new trial and/or to amend the judgment is denied. My conclusions of law follow.

### A. *The Settlement Amount Should Be Reduced from the Total Judgment Amount.*

Plaintiffs cite *Perlmutter v. Blessing,* 706 P.2d 772 (Colo.1985) to support their proposition that the consideration of a settling defendant (Scognamillo's $100,000.00) should be applied first to Scognamillo's "individual" liability [3] and then any remaining balance should be applied to the common liability shared with Vogler (and Faircloth). Although the result in *Perlmutter,* in effect, supports that proposition, it is not the legal proposition for which the case stands.

Perlmutter was a homeowner plaintiff who sued three defendants: (1) Harmony Homes (the builder); (2) Blessing (the architect/designer); and, (3) Peak (Blessing's employer—invoking the *"respondeat superior* doctrine"). The court found Harmony liable for $67,037.00. However, all three defendants were deemed to be jointly and severally liable for $44,067.00 of this amount. Thus, Harmony was individually liable for $22,970.00 and jointly and severally liable for $44,067.00. Harmony settled for $30,000.00. Blessing and Park then argued the $30,000.00 should be deducted from the joint and several part of the liability (the $44,067.00) and not from the total amount ($67,037.00). The court disagreed, interpreting the Joint Tortfeasors Act to require the amount paid in settlement be deducted from the total amount of the damages rather than the joint and several portion of the judgment alone.

The effect was to reduce the total judgment, $67,037.00, by the settlement amount, $30,000.00, resulting in a judgment award of $37,037.00.[4] Applying the

---

yond his own pro rata share of the entire liability."

**3.** "Individual liability" is a bit misleading because Scognamillo is jointly and severally liable for this "individual liability"—the $849,000.00 in punitive damages—with co-defendant Faircloth. Vogler is not jointly and severally liable for this amount, thus, as far as Vogler is concerned, this

amount is "individual" since he is not jointly and severally liable with Scognamillo and Faircloth.

**4.** Had the defendants in *Perlmutter* been successful in their argument, the award would have been $14,067.00 because $44,067.00 (the joint and several amount) minus $30,000.00 (the set-

same formula to the instant case, the total damage award is for $1,362,850.00.[5] A deduction of the $100,000.00 settlement amount results in a total damage award of $1,262,850.00. Accordingly, the $100,000.00 does not reach the joint and several portion of the liability. Thus, the judgment must remain intact with respect to this issue. As the court in *Perlmutter* stated:

> [s]etting off the settlement amount against the entire judgment will provide the plaintiffs here with the full damages to which they were entitled. *Were the funds to be set off from the joint and several liability only, the plaintiffs would not receive compensation for that portion of the damages attributable to Harmony Homes individually; the settlement and judgment together would represent only the joint and several portion of the total award.* We refuse to adopt a construction of the Act that nullifies a portion of the judgment rendered in favor of the plaintiffs.

Moreover, as explained in *Kussman v. City and County of Denver,* 706 P.2d 776, 781–782 (Colo.1985), the Act is designed to encourage settlement, *even when settlement may result in a tortfeasor paying more than its proportionate share of the damages.* [citations omitted]. Here, deducting the joint and several amount from the joint and several liability alone would discourage settlement: plaintiffs would refuse to settle, aware that the settlement amount would be applied to reduce the damages recoverable from the remaining tortfeasor. (emphasis added).

*Perlmutter, supra,* at 775–776.

■ For the reasons stated above in *Perlmutter,* defendant's motion must be denied. However, had this case been commenced on July 1, 1986, or thereafter, I would have had to grant Vogler's motion. The recent enactment of Colo.Rev.Stat. § 13–21–111.5 (Cum.Supp.1986) would re-

quire such a result because the statute effectively abolishes joint and several liability. The statute states:

> Civil Liability Cases-Pro Rata Liability of Defendants. In an action brought as a result of a death or an injury to a person or property, *no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant that produced the claimed injury, death, damage, or loss.*
>
> ... [T]he court shall make special findings determining the percentage of negligence or fault attributable to each of the parties ... determining the total amount of damages sustained by each. (emphasis added).

The Colorado Supreme Court recently declared that this statute *abolishes joint and several liability.* The court stated in *Brochner v. Western Insurance Company,* 724 P.2d 1293, 1295 (Colo.1986):

> the General Assembly has abolished the principle of joint and several liability. Section 13–21–111.5(1), effective July 1, 1986, provides as follows: [the court cites the statute] (emphasis added).

Thus, the Colorado legislature has reacted to the seemingly "inequitable" results caused by the application of joint and several liability, especially when, as here, one joint tortfeasor settles for an amount not equalling his pro rata share of the joint liability. The instant case, however, was commenced long before the effective date of July 1, 1986. It is therefore not applicable.

**B.** *The Settlement Amount Reduction: Applicability to Punitive and Compensatory Damages.*

As a rejoinder, Vogler argues payments made by co-judgment debtors should be applied first toward actual damages before they are applied toward exemplary dam-

---

tlement amount) equals $14,067.00. Such was not the case, however.

**5.** $849,020.00 (Scognamillo and Faircloth's punitive damages) + $213,830.00 (all three defend-

ants compensatory damages) + $300,000.00 (Vogler's individual punitive damages) = $1,362,850.00, (the total damage award).

ages. In *Perlmutter, supra,* there were no punitive damages, so the court never reached this issue. Vogler cites *In Re Smith's Estate, Guardianship of Smith,* 211 Kan. 397, 507 P.2d 189 (1973) as supporting authority. That case declares, in essence, that each party should pay their own punitive, or exemplary damages since such damages are imposed, not because of any special merit in plaintiff's case, but to punish the wrongdoer and to deter and restrain others from similar wrongdoings.

> Since exemplary damages ... are awarded not to enrich or reward a plaintiff but rather to serve as an object lesson both to a wrongdoer, himself, and to others who might be tempted to follow his wayward ways, the purpose they are intended to serve would be thwarted if th[is] additional financial burden were cast upon innocent shoulders ... The objective to be attained in imposing punitive damages is to make the culprit feel the pecuniary punch, not his guiltless [co-defendant].

*Guardianship of Smith, supra,* 507 P.2d at 195–196.

Vogler asserts that by not adjusting the damage award to account for Scognamillo's settlement consideration, he (Vogler) will have to pay, in effect, "additional" punitive damages. He supports this contention by constructing the following matrix of cause and effect. He states he will be liable for a larger portion of the joint and several compensatory damages (with no corresponding reduction in punitive damages) now that Scognamillo no longer is required to pay. Accordingly, such a result does not comport with the the policy goals of the Act, because plaintiffs and Scognamillo would be able to increase the degree of punishment originally imposed upon Vogler.

■ Although the facts of *Guardianship of Smith* are distinguishable from those in the instant case,[6] the underlying public policy announced concerning exemplary and compensatory damages is also the public policy in Colorado regarding this issue. *Mince v. Butters,* 200 Colo. 501, 616 P.2d 127 (1980). However, this policy does not mandate the setoff from the judgment Vogler seeks. In fact, this policy argument militates against the setoff Vogler seeks just as much as it supports it. The reason for this paradoxical result is because if the setoff were to apply solely to the compensatory portion of the judgment, Faircloth, the "forgotten" third defendant, would not be able to apply the setoff toward his and Scagnamillo's punitive damages and thus Faircloth would, in effect, have to pay more than his "fair share" of the punitive damage award.

Given the intricacies of joint and several liability, complicated by attempts at dividing the total award between compensatory and exemplary damages, and finally applying a setoff of a settling tortfeasor's consideration, Vogler's general policy argument becomes unworkable because no matter how the settlement consideration is set off, either one of the remaining two joint tortfeasors can construct an argument stating they are being forced to pay "additional punitive damages" in violation of the underlying policy of the Act. This, however, is the nature of settlements *vis. a vis.* joint and several liability.

■ Vogler's complaint is not really with the Second Amended Judgment. Rather, it is with the resulting "inequities" of joint and several liability when a joint tortfeasor obtains a settlement with the plaintiffs, even when the settlement consideration is set off from the total damage award. Though the Colorado legislature has reacted to this problem as stated earlier, the effective date of the statute precludes Vogler from benefitting from it. Although Scognamillo previously was indebted, jointly and severally, to plaintiffs for $849,020.00 in punitive damages, and $213,830.00 in compensatory damages, he will settle for $100,000.00. Obviously, under joint and several liability, an additional financial burden is going to befall his former

---

6. *Guardianship of Smith* involved a guardian/surety relationship which addressed the issue of prioritizing compensatory damages over punitive damages in the special context of that relationship. The court ruled a surety should not have to pay punitive damages of a guardian lest the policy goals of punitive damages be circumvented.

joint tortfeasors, the mandatory set off notwithstanding. Moreover, it is important to realize Scognamillo has not yet settled. It remains to be seen whether he makes the $100,000.00 payment in 1990. Thus, a set-off at this point would be premature. If he cannot, or will not, pay four years from now, then it would be as if there were never any settlement in the first place. The settlement agreement is executory in nature and as such cannot be set off.

I need not reach plaintiffs' remaining arguments since the motion is denied based on the preceding analysis.

■ Next, Vogler argues the judgment should be amended so that he is not responsible for plaintiffs' costs expended after the reversal of his punitive damage award by the Tenth Circuit Court of Appeals. He asserts plaintiffs were not the "prevailing parties" since the case was remanded solely for the determination of punitive damages less than the original joint and several amount of $849,020.00. Such, however, was not the order. The remand ordered separate consideration of Vogler's punitive damages; it did not order a lesser amount.

Such is not the correct standard for determining a prevailing party in any event. If Vogler, on remand, would have been cleared of *all* punitive damages, then plaintiffs would not be the prevailing parties. Plaintiffs, however, were successful in exacting $300,000.00 in punitive damages from Vogler *individually,* in addition to the existing $849,020.00 punitive damage award against Faircloth and Scognamillo which was not successfully appealed. The motion is denied, Vogler is to pay costs.

## III.

### INTERVENOR'S COMPLAINT IN INTERVENTION

Century Bank is a creditor of Dynamic by virtue of a loan it made to Dynamic in the original principal sum of $76,229.99 pursuant to a promissory note dated Au-

gust 26, 1985. In making the loan, Century asserts it obtained a security interest in Dynamic's accounts receivable which is fully perfected and first in right and priority as to any claims which may be made by plaintiffs.

### A. LIEN PRIORITY.

The first determination which must be made is whether Century Bank has a "fully perfected security interest" in the accounts receivable of Dynamic. As a general rule, "perfection" gives a secured party priority to the collateral of a firm over other claims to the same collateral. *See Welbourne Development Company v. Affiliated Clearance Corp.,* 28 Colo.App. 313, 472 P.2d 684 (1970). Since the object of the security interest is to provide the creditor with security as to the loan, the creditor must have priority in the collateral securing the loan against all adverse third parties. In order to acquire this priority over adverse third parties, the security interest must be "perfected".

According to Colo.Rev.Stat. §§ 4–9–302, 4–9–304, perfection may be accomplished by "filing". According to Colo.Rev.Stat. §§ 4–9–401, 4–9–402, "filing" may be accomplished simply by submitting a financing statement containing, *inter alia,* the signature of the debtor, an address of the secured party from which information concerning the collateral can be obtained, mailing address of the debtor, and a description of the types of, or items of, collateral.[7] The security interest between Vogler (on behalf of Dynamic) and Century Bank was perfected on August 26, 1985 pursuant to Colo.Rev.Stat. §§ 4–9–401. 4–9–402 (Cum. Supp.1986). Because the parties have not made an issue of the sufficiency of the financing statement and whether it constitutes a perfected security interest, I shall assume it has been adequately and properly filed and thus is perfected.

There has been no Colorado case directly on point regarding priority between a judg-

---

**7.** § 4–9–402 provides:

A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concern-

ing the security interest may be obtained, gives a mailing address of the debtor, and contains a statement containing the types, or describing the items, of collateral. . . .

ment creditor and an intervenor with a security interest in collateral garnished pursuant to a default judgment. The Second Circuit, however, has had occasion to interpret this issue as it relates to the Uniform Commercial Code. Because the specific sections of the U.C.C. interpreted by the Second Circuit (§§ 4–9–301, 4–9–201) are identical to Colorado law (Colo.Rev. Stat. §§ 4–9–301, 4–9–201 (Cum.Supp.1986)) the analysis is obviously applicable. I find the Second Circuit's logic, statutory interpretation, and analyses of the U.C.C. policy goals persuasive. Accordingly, I shall apply its conclusions of law to the instant case.

■ In *Dick Warner Cargo v. Aetna Business Credit*, 746 F.2d 126 (2nd Cir. 1984), the Second Circuit held that a prior perfected security interest in the accounts receivable of a debtor was entitled to priority over a judgment lien against the debtor. The court stated that under the language of §§ 9–201, and 9–301(b), a perfected security interest securing an obligation undertaken by the debtor before the creation of a judicial lien would take priority over the judicial lien, even if the obligation would not become due until after the creation of the lien. Thus, a judgment creditor is effectively a competing lien creditor whose interests are subordinate to a previously perfected security interest in the subject collateral. If it were otherwise, the policy goals behind creating secured transactions under Article 9 of the U.C.C. would be greatly undermined; indeed, a "secured transaction" would come to have little more meaning than a "secondary interest" in the collateral. Moreover, the concept of "first in time, first in right" would be relegated to the legal abyss.

In *Guy Martin Buick, Inc. v. The Colorado Springs National Bank*, 32 Colo. App. 235, 511 P.2d 912, 914 (1973), *aff'd by*, 184 Colo. 166, 519 P.2d 354 (1974), the court held,

> It is the policy of the Uniform Commercial Code that a security agreement shall be effective between the parties and against other parties except as specifically provided otherwise in the Code. [Citation to the Code omitted.]

Since a judgment lien is not specified as taking priority over a fully perfected security interest, plaintiffs' motion must be denied.

Plaintiffs argue Century Bank holds a security interest in property other than that subject to garnishment by plaintiffs. According to the loan agreement between Dynamic and Century, Century holds a security interest in Dynamic's "accounts receivable, all accounts, inventory, equipment, and furniture and fixtures now owned or hereafter acquired."

Simply because Century Bank has a security interest in additional collateral is irrelevant. What is important is that the subject accounts receivable are a security interest which Century Bank had fully perfected before plaintiffs attempted to execute writs of garnishment pursuant to the default judgment.

### IV.

### PLAINTIFFS' MOTION FOR DISBURSEMENT OF FUNDS AND OTHER RELIEF

On August 14, 1986, I entered an amended default judgment against Dynamic and in favor of Vogler for the use and benefit of plaintiffs. On October 29, 1986, I entered an order charging the partnership interest of Faircloth in Lake Erie Gas and Oil Company for the satisfaction of Faircloth's liability on the judgment. $605.68 has been paid into the registry of the court in accordance with this order.

Plaintiffs have caused writs of garnishment to be served on Eastman Kodak and Martin Marietta pursuant to the default judgment. Both garnishees answered by stating they were indebted to Dynamic; Kodak in the amount of $779.87, and Martin Marietta in the amount of $7,947.22.

Because I have determined Century Bank has priority in the accounts receivable of Dynamic, I cannot grant plaintiffs' Motion for Disbursement of Funds.

IT IS THEREFORE ORDERED THAT:

1. Plaintiffs' Motion for a New Trial and/or to Amend the Second Amended Judgment is DENIED.

2. Intervenor Century Bank's security interest in the accounts receivable of Dynamic is superior to plaintiffs' garnishment claims as judgment creditors against co-garnishees Dynamic, Eastman Kodak, and Martin Marietta.

3. Plaintiffs' Motion For Disbursement of Funds and Other Relief is granted as to the $605.68 from Faircloth's interest in Lake Erie Gas and Oil. It is otherwise denied.