**E. Jeane FENTON, as surviving spouse of Leon W. Fenton, and as Personal Representative of the Estate of Leon W. Fenton, Plaintiff–Appellee,**

v.

**FIBREBOARD CORPORATION and Owens–Illinois, Inc., Defendants–Appellants.**

**No. 90CA0319.**

Colorado Court of Appeals, Division V.

Sept. 12, 1991.

Rehearing Denied Oct. 10, 1991.

Certiorari Granted April 13, 1992.

Williams & Trine, J. Conard Metcalf, Michael Patrick, Boulder, for plaintiff-appellee.

Pryor, Carney & Johnson, P.C., Peggy S. Ball, Englewood, for defendants-appellants.

Opinion by Judge NEY.

Defendants, Fibreboard Corporation and Owens–Illinois, Inc., appeal the judgment entered on a jury verdict in favor of plaintiff, E. Jeane Fenton. Defendants also appeal the trial court's award of costs and partial denial of a set-off. We affirm in part, reverse in part, and remand with instructions.

Plaintiff initiated this products liability action against a number of manufacturers of insulation products containing asbestos, seeking damages for the illness and death of her husband. Prior to trial, plaintiff settled her claims against all defendants except Fibreboard and Owens–Illinois. Following the jury trial, a verdict in the amount of $190,000 for wrongful death and loss of consortium was returned against these defendants. The court entered judgment in this amount, plus interest and costs.

Subsequently, defendants moved to alter or amend the judgment to reflect a set-off of amount of settlement with other defendants and also filed objections to plaintiff's bill of costs. The trial court ordered a partial set-off and reduced the costs awarded to plaintiff. This appeal asserting errors in both trial and post-trial proceedings followed.

I.

Defendants first assert that the trial court erred in admitting expert testimony which was based upon microscope slides of samples of tissue from decedent. Defendants allege these slides had been withheld from discovery to them and that the testimony constituted inadmissible hearsay. We disagree.

Defendants argue that their cause was unfairly prejudiced by the surprise testimony of plaintiff's expert, Dr. Repsher, and by the hearsay testimony of other experts introduced through Dr. Repsher. Dr. Repsher's testimony was based in part upon his examination of microscope slides prepared by Dr. Abraham from tissue samples taken from decedent and from reports prepared by Drs. Burnett and Craighead following their tissue analyses. Neither the slides nor the reports were admitted into evidence.

Plaintiff had endorsed Dr. Repsher as an expert witness in her trial data certificate and summarized his testimony as "regarding his diagnosis of mesothelioma and how it was caused by exposure to asbestos containing products." Plaintiff's supplemental trial data certificate summarized Dr. Repsher's testimony as concerning "Mr. Fenton's diagnosis and causation, as well as State of the Art Testimony...."

■ A review of the record reveals that the testimony in controversy is that of the diagnosis and causation of decedent's illness. While it is true that the slides presented to Dr. Repsher shortly before his testimony had not been previously disclosed to defendants, the tissue samples from which they were prepared were available to all parties. Therefore there was no discovery violation. Further, CRE 703 provides that the facts or data upon which an expert bases an opinion may be those perceived or made known to him at or before the hearing.

■ The electron microscopic analysis of the tissue slides prepared by Dr. Burnett was a second basis for the expert opinion of Dr. Repsher and had likewise not been disclosed to defendants prior to Dr. Repsher's testimony. A copy of the report was provided to defendants at trial.

We perceive no abuse of the trial court's discretion in allowing the testimony of Dr. Repsher based upon his opinion of the data contained in the slides prepared by Dr. Abraham or the report prepared by Dr. Burnett. We do not agree that Dr. Repsher's opinion was based upon the opinion of other experts but rather was "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." CRE 703.

■ Defendants specifically object to Dr. Repsher's statement that Dr. Abraham had found evidence of asbestosis, but this statement was elicited by defendants during cross-examination in response to the question, "Has anyone found asbestosis who is a pathologist?" Thus, the error, if one occurred, was invited by defendants and may not now be asserted as a basis for reversal.

■ Nor is there any merit to defendants' further argument that the testimony by Dr. Repsher "gutted their case" by revealing medical evidence purposely withheld from discovery. Defendants' theory of defense was that no evidence of asbestos in the form of pleural plaques or asbestosis was visible in operation or autopsy slides and reports of decedent. This apparently was the case in the existing slides and reports prepared prior to those of Drs. Abraham and Burnett.

The slides and report of plaintiff prepared by Drs. Abraham and Burnett were, however, made from tissue samples of the decedent which had always been equally available to defendants. In fact, these tissue samples were the basis of an earlier

report prepared by Dr. Craighead at the request of a defendant no longer party to this action.

Defendants argue that they were only given access to slides which were prepared prior to those prepared by Dr. Abraham. While this is true, it is equally true that the tissue samples from which the Abraham slides were prepared were available to defendants from the outset, just as they were to plaintiff.

Moreover, the discrepancies in the earlier slides and reports prepared in connection with decedent's surgery and autopsy and later slides and reports of Dr. Abraham, Burnett, and Craighead were the subject of extensive cross-examination of Dr. Repsher by defendants.

Defendants' reliance upon *Daniels v. Rapco Foam, Inc.*, 762 P.2d 717 (Colo.App. 1988) is misplaced. While in *Daniels* the trial court was found to have abused its discretion in allowing expert testimony of which the defendant was unaware, the facts of that case are readily distinguishable from those at issue here. There, the expert was designated less than a month before trial, and his designation was unaccompanied either by a summary of his qualifications or by a summary of his expected testimony. Here, Dr. Repsher's designation and a summary of testimony was available and met the C.R.C.P. 121 requirement "to provide both sides with the opportunity to prepare adequately for trial and to prevent undue surprise." *Conrad v. Imatani*, 724 P.2d 89 (Colo.App.1986).

We likewise find no abuse of the trial court's discretion in Dr. Repsher's peripheral reliance upon Dr. Craighead's report as a basis for his opinion as to the diagnosis and causation of Mr. Fenton's fatal illness. Reliance upon facts not personally observed but which have been reasonably relied upon by experts in the same field is an acceptable basis of expert opinion. And, the trial court has broad discretion in determining whether the requirements governing expert opinions have been satisfied and whether the expert's testimony is admissible. *Gold Rush Investments, Inc. v. Johnson*, 807 P.2d 1169 (Colo.App.

1990); *see Connell v. Sun Exploration & Production Co.*, 655 P.2d 426 (Colo.App. 1982).

## II.

Defendants next assert that the trial court erred in directing a verdict against them and in refusing to instruct the jury on defendants' state-of-the-art defense. We disagree.

## A.

Defendants first contend that the lack of conclusive evidence that their product was unreasonably dangerous to users such as decedent precludes a directed verdict on the theory of strict liability. At trial, defendants presented evidence which purported to prove that scientific and technical information available at the time of decedent's exposure to their product failed to show a positive correlation between asbestos dust and health problems such as decedent suffered.

We agree with the trial court's conclusion that *Anderson v. Heron Engineering Co.*, 198 Colo. 391, 604 P.2d 674 (1979) is dispositive of this issue. Our supreme Court, in *Anderson*, found that premising strict liability upon a manufacturer's knowledge served to focus attention away from the product and that "such a result would be incongruous and incorrect, for in a strict liability case, the focus is on the product, not on the conduct or knowledge of the defendant."

Evidence was offered by plaintiff to prove that the product of defendants was unreasonably dangerous and carried no warning to that effect. Defendants offered no evidence that asbestos was determined to be safe at the relevant time, but instead offered evidence as to their knowledge or lack of knowledge of the product's safety. Therefore, absent evidence to the contrary, the trial court correctly concluded that the product was unreasonably dangerous as a matter of law.

Because the conduct of defendants is irrelevant in a strict liability setting, any

consideration of defendants' awareness of possible dangers to users of their product applies only to a determination of liability for punitive damages.

An award of punitive damages "is calculated to punish wrongful conduct." *Palmer v. A.H. Robins Co.,* 684 P.2d 187 (Colo. 1984). Thus, the focus in determining punitive damages shifts from the product to the conduct. Therefore, the court correctly limited defendants' testimony concerning their knowledge of the relationship between asbestos dust and lung disease to the issue of punitive damages.

### B.

■ Defendants next contend that the trial court's refusal to give *CJI–Civ.3d* 14:24 (1989) denied them the opportunity to present a state-of-the-art defense, with resulting prejudice.

The Notes on Use following the requested instruction state:

"This instruction should not be given unless there is sufficient evidence for a reasonable jury to find the basic facts giving rise to the presumption."

■ Therefore, in order for the instruction to be given, there must be sufficient evidence that the best technical, mechanical, and scientific knowledge and methods available prior to the sale of their product had been utilized by defendants.

Here, the uncontradicted evidence supports the trial court's implied determination that defendants had available to them scientific knowledge of the possible dangers of their product to those who installed it, especially if done in a restricted environment. Consequently, the instruction was properly refused.

### III.

■ Defendants next assert that the trial court abused its discretion in the assessment of costs. We agree.

Plaintiff submitted bills of costs totaling approximately $26,700. The trial court reduced this amount to approximately $20,750. In doing so, the trial court made no findings, only stating that it was "making a slight reduction in plaintiff's bill of costs. Total amount of the costs are $20,754.77. They are added to the judgment."

In response to defendants' request that the court "make a record as to what's being reduced and what is not," the court replied, "I have reduced some of the plaintiff's expert costs by $5,600." When asked the reason for the reduction, the court replied, "Not reasonable."

Defendants acknowledge that an award of costs lies within the discretion of the trial court, subject to statutory parameters. Section 13–16–122, C.R.S. (1987 Repl.Vol. 6A); *Rossmiller v. Romero,* 625 P.2d 1029 (Colo.1981). However, the awarding of expert witness fees is not without limits but is "circumscribed by the rule of reason, *viz.,* sound judicial discretion." *Leadville Water Co. v. Parkville Water District,* 164 Colo. 362, 436 P.2d 659 (1967).

Here, the plaintiff requested a "lump sum" figure for the trial testimony of each of several witnesses. No documentation indicating a reasonable basis upon which these sums were calculated was submitted by plaintiff, nor were the actual sums expended for the witnesses' services shown.

In addition to the fees for expert testimony, plaintiff's bills of costs included deposition costs and "general expenses." It is unclear whether the court found these costs reasonable or which, if any, were disallowed.

Defendants argue that certain costs requested for expert witnesses were unjustified; plaintiff speculates in reply as to which costs were excluded by the trial court. The record before us is not sufficient to determine which costs were allowed and whether they were reasonable and permitted by statute. Therefore, the cause must be remanded to the trial court for findings which will establish the costs to be paid by defendants and the basis upon which the court arrived at its determination of the reasonableness of those costs.

In making these findings, the court must specify which expenses are allowed in light of § 13–16–112, C.R.S. (1987 Repl.Vol. 6A) (limit of four witnesses unless necessity for

more certified by court); § 13–16–122 (items includable as costs); and *Shultz v. Linden–Alimak, Inc.*, 734 P.2d 146 (Colo. App.1986) (certain expenses for depositions and general expenses not allowed).

IV.

Finally, defendants contend that the trial court erred by failing to allow a set-off for the full amount of settlements entered into by plaintiff with other parties. We again disagree.

As a threshold matter, defendants question the timeliness of the trial court's ruling. While we find no error regarding timeliness, we address the issue for clarification on the threshold matter of jurisdiction.

On November 8, 1989, defendants filed a motion to alter or amend the judgment to reflect the requested set-off. On November 22, 1989, defendant filed a renewed motion for mistrial. At a hearing on January 18, 1990, the court partially granted the motion for set-off, denied the motion for mistrial, and set costs to be paid by defendants. The written order reflecting these rulings was issued on February 20, 1990.

C.R.C.P. 59(j) provides:

"The court shall determine any post-trial motion within 60 days of the date of the filing of the motion. Where there are multiple motions for post-trial relief, the time for determination shall commence on the date of filing of the last of such motions. Any post-trial motion that has not been decided within the 60–day determination period shall, without further action by the court, be deemed denied...."

■ While the statutory limit of sixty days had expired before partial granting of the motion for set-off, sixty days had not elapsed prior to denial of the motion for mistrial. Accordingly, because the statute extends the time limit to sixty days following the filing of the last of multiple motions, the court properly exercised jurisdiction over the matter. *See In re Marriage of Nixon*, 785 P.2d 151 (Colo.App.1989); *Wright Farms, Inc. v. Weninger*, 669 P.2d 1054 (Colo.App.1983).

■ Furthermore, because the court orally ruled upon the motions within sixty days, C.R.C.P. 59(j) is satisfied even though the written order was signed and entered after the sixty-day period. *See Colorado Springs v. Timberlane Associates*, 783 P.2d 287 (Colo.1989).

■ Having thus concluded that the court had jurisdiction, we now consider the substance of defendants' contention. Relying upon the Uniform Contribution Among Tortfeasors Act, § 13–50.5–101 to 13–50.5–106, C.R.S. (1987 Repl Vol. 6A), defendants sought to reduce the judgment by the aggregate amount of plaintiff's prior settlements with other defendants no longer parties to this action.

The trial court ordered that $50,500 received by plaintiff through settlement agreements with other original defendants be applied as a set-off to the judgment against these defendants. However, the court found that these defendants were not entitled to a set-off for the $85,000 settlement between plaintiff and defendant Johns–Manville because plaintiff had not received, and might never receive, payment from the Manville trust. In so finding, the trial court considered and rejected, as do we, the reasoning of *Gallin v. Owens–Illinois*, 760 F.Supp. 33 (E.D.N.Y.1991).

The court then ordered that any funds received by plaintiff from Johns–Manville be paid to the Clerk of the District Court and that plaintiff so notify the trial court and defendants. Thereafter, applications for distribution in accordance with the trial court's order could be made.

Defendants argue that the statute mandates the application of all settlements to the amount of judgment against the nonsettling defendants. In support of this argument, defendants rely upon *Perlmutter v. Blessing*, 706 P.2d 772 (Colo.1985). In *Perlmutter*, the supreme court, construing § 13–50.5–105, C.R.S. (1987 Repl.Vol. 6A) stated:

"Where the only injuries involved in an action are those for which all tortfeasors are jointly or severally liable, the application of this section is clear: either the

settlement amount or the amount provided for in the settlement document, whichever is greater, must be deducted from the total judgment against the remaining tortfeasors."

While it is clear that all amounts in settlement received by plaintiff must be deducted from the judgment against defendants, it is unclear as to how the action ordered by the court does otherwise. The *Perlmutter* court also pointed out that the Act retains the rule of joint and several liability so that each tortfeasor is liable for the whole of the common liability in the event that it cannot be collected from the other tortfeasors. Further, the court noted the legislative intent to provide full compensation for the plaintiff even at the expense of equitable apportionment of damages among the tortfeasors.

Here, the trial court has set off the judgment against defendants for any amount *collected* by plaintiff in settlement of claims against defendants no longer parties, including Johns–Manville. In the event the settlement from Johns–Manville cannot be collected, defendants remain liable. *See Perlmutter, supra.* Thus, full compensation for plaintiff, as intended by the General Assembly, is ensured.

Consequently, we conclude that the trial court in effect ordered a set-off for the full amount of settlements received by plaintiff, $50,500 immediately and any additional amounts when paid to plaintiff.

The judgment is affirmed in all respects, except as to the award of costs. That part of the judgment is reversed, and the cause is remanded for further proceedings thereon consistent with this opinion.

STERNBERG, C.J., and DAVIDSON, J., concur.